392 So.2d 710 (1980)
Paul M. KNUCKLES, Plaintiff-Appellee,
v.
Timothy BEAUGH, Defendant-Appellant.
No. 7852.
Court of Appeal of Louisiana, Third Circuit.
December 17, 1980.
*711 Raleigh Newman, Lake Charles, for defendant-appellant.
McClain, Morgan & Greenwald, R. Scott McClain, Lake Charles, for plaintiff-appellee.
Before CULPEPPER, DOMENGEAUX and CUTRER, JJ.
CUTRER, Judge.
Paul Knuckles sued Timothy Beaugh for damages alleging that Beaugh committed a battery upon him on the night of April 26, 1978. The trial court rendered judgment in favor of plaintiff for $1,128.78 for medical expenses and $18,000.00 for general damages. The defendant appeals. We affirm as to liability, but find the general damage award to be excessive.
The suit arises from an incident at a Lake Charles bar known as the "Keg." It is undisputed that on the night in question, the defendant kicked the plaintiff twice in the scrotal area and struck him several times in the face. As a result, Knuckles suffered injuries requiring his hospitalization for three days, during which time exploratory surgery was necessary to examine his left testicle.
The issues are: (1) Whether the defendant acted in self-defense; (2) whether there was any provocation by the plaintiff that would mitigate the damages; and (3) did the trial court abuse its discretion in awarding $18,000.00 in general damages.
The parties to this suit had a confrontation at the Lake Charles beach a week or so before their meeting at the "Keg." On that occasion, words were exchanged for reasons which are unclear. The defendant, and a friend of his, testified that at one point plaintiff approached defendant with a knife and retreated only after defendant produced a knife of his own. Plaintiff denies ever having had a knife. He states that he approached defendant, after an earlier exchange of harsh words, to talk, whereupon defendant pulled a knife on him. Plaintiff left the beach scene in a van with other persons.
On the night of their encounter in the "Keg," plaintiff was facing the bar, talking to a friend, while defendant and some friends were walking parallel to the bar, passing to the rear of plaintiff. Shortly after reaching plaintiff, defendant recognized plaintiff and, according to his testimony, said, "Look there's the guy that pulled a knife on me," whereupon plaintiff turned around quickly, moving toward defendant as he turned. Defendant explained his next actions:
"... I deliberately kicked to back him off, you know, because I didn't know if he was going to come right at me or, you know, what his intentions were at the time."
Defendant kicked more than once and then followed with several blows to plaintiff's head. Plaintiff stated that when he *712 heard defendant's comment, he turned around but made no move toward defendant.
Each case of battery depends upon its own peculiar facts and circumstances and resort must be held to the evidence to determine who is the aggressor and whether any provocation occurred sufficient to justify a battery. Tripoli v. Gurry, 253 La. 473, 218 So.2d 563 (1969); Byrd v. Isgitt, 338 So.2d 374 (La.App. 3rd Cir. 1976). In battery cases, the plaintiff has the general burden of proof equivalent to that which any plaintiff has in a tort or damage suit. Similarly, the defendant must establish sufficient facts to constitute a provocation or a justification for the battery by a reasonable preponderance of the evidence. Ogden v. Smith, 344 So.2d 1099 (La.App. 3rd Cir. 1977).
To establish a provocation, the defendant must show some conduct or action by the plaintiff sufficient to provoke and arouse the defendant to the point of physical retaliation. Andrepont v. Naquin, 345 So.2d 1216 (La.App. 1st Cir. 1977); Squyres v. Phillips, 285 So.2d 337 (La.App. 3rd Cir. 1973).
In this case, the defendant admittedly never heard plaintiff utter any threatening or offensive words on the night of the battery. He didn't see plaintiff raise his hands or make any threatening motion. Plaintiff was not armed. Furthermore, the defendant pleaded guilty to a criminal charge of simple battery arising from the incident. The circumstances simply do not support the defendant's contention that he acted out of reasonable fear for the safety of his own person, or that plaintiff's conduct was such as would provoke such an attack. This is so even if the defendant's version of the facts are accepted.
We now turn to the question of damages. The case of Chaney v. Our Lady of Fatima Catholic Church, et al., 391 So.2d 501 (La. App. 3rd Cir. 1980) discusses the role of the appellate court in reviewing quantum:
"Whenever the issue of quantum is considered on appeal, the court must make an initial inquiry as to whether the trial court's award for the particular injury, and its effect on this particular injured person, is a clear abuse of the trier of fact's `much discretion', LSA-C.C. Article 1934(3), in the award of damages. It is only after articulated analysis of the facts discloses an abuse of discretion, that the award may, on appellate review, be considered either excessive or insufficient. Reck v. Stevens, 373 So.2d 498 (La.1979); Carollo v. Wilson, 353 So.2d 249 (La.1977); Schexnayder v. Carpenter, 346 So.2d 196 (La.1977); Olds v. Ashley, [250 La. 935] 200 So.2d 1 (La.1967)."
Dr. John Melton, III, treated the plaintiff after the attack. He testified at trial indicating that plaintiff was admitted to the hospital at 2:30 A.M. the morning of April 27th, complaining of extreme pain in the left testicle area, and the lower quadrant of the abdomen. The left side of the scrotum was swollen larger than a grapefruit. A large hematoma initially prevented the doctor from determining whether the testicle and epididymis, which is the structure behind the testicle, were intact. Consequently, he performed exploratory surgery and evacuated the blood clot. The doctor found that the testicle, epididymis and vas deferens were intact. He discharged the plaintiff on April 30th, prescribing pain medication, an antibiotic and a drug to prevent epididymitis, infection of the epididymis. According to Dr. Melton's records, plaintiff was told to return for a follow up examination in five days but never returned. The doctor further testified that such a patient would probably experience discomfort for from six to eight weeks. Plaintiff testified that he suffered pain for about five or six weeks. There is no indication that plaintiff had any residual effect from the injury. Plaintiff otherwise sustained contusions to the head, a black eye and a cut lip which required no treatment.
There was also testimony concerning the effect of plaintiff's injury on his education. Plaintiff stated that he missed his final examinations at McNeese State University *713 because of the injury and was not allowed to take them later. The consequences of this are not clear. Plaintiff did not testify as to how many courses he was enrolled in. He does not testify that he failed the courses in which he couldn't take the finals. His father's testimony indicates that his grades dropped from a "B" minus to a "C" minus. The detrimental effect on plaintiff's education is not clear, the testimony being inconclusive.
The plaintiff also complains of great humiliation due to his injury. He apparently suffered no permanent psychological problems but states that the attack was the impetus for his transfer to another university. Plaintiff made no claim for lost wages.
We conclude that an award of $18,000.00 in general damages in this case is excessive. The plaintiff was hospitalized for only three days where he underwent successful surgery to drain the blood clot. After leaving the hospital, he found it painful and awkward to walk. He regained his mobility, however, in a few days. After six weeks, the plaintiff stated that he was free of pain. We recognize that the particular injury was undoubtedly extremely painful for a short time, but in view of the relatively short period of recovery and the lack of residual effect, we find that $10,000.00 in general damages is adequate compensation. In a case such as this, care must be taken not to let the offensive or brutal nature of the defendant's conduct lead the court out of the realm of compensatory damages into damages which may contain punitive aspects. Article 2315 of the Civil Code contemplates simple reparation, a just and adequate compensation for injuries. It suggests no idea of revenge or punishment. Ricard v. State, 382 So.2d 190 (La.App. 1st Cir. 1980).
For the above and foregoing reasons, the judgment of the trial court is amended by reducing the total award for plaintiff to the sum of $11,128.78. As amended, the judgment is affirmed. The costs of this appeal are assessed one-half to defendant-appellant and one-half to the plaintiff-appellee.
AMENDED AND AFFIRMED.