370 So.2d 1274 (1979)
George HODGES, et al.
v.
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS, et al.
No. 6855.
Court of Appeal of Louisiana, Third Circuit.
April 11, 1979.
Rehearing Denied June 6, 1979.
*1275 Hopkins & Little, Winfield E. Little, Jr., Sulphur, for defendant-appellant, U.S.F. & G.
John W. King, Baton Rouge, for defendant-appellant, Dept. of Highways.
Stephen R. Streete, Lake Charles, for defendant-appellant, Calcasieu Parish Police Jury.
Baggett, McCall, Singleton & Ranier, William B. Baggett, Lake Charles, for plaintiff-appellee.
Before WATSON, GUIDRY and FORET, JJ.
WATSON, Judge.
George Hodges, plaintiff, instituted this suit against the State of Louisiana, Department of Highways,[1] and the Calcasieu Parish Police Jury. His wife, Billie Hodges, was also named as plaintiff, but she is not a *1276 party at interest and her claim will not be further considered. By amending petition, United States Fidelity and Guaranty Company, a public liability insurer of the Calcasieu Parish Police Jury, was named as an additional defendant.
Hodges was severely injured in a vehicular collision which occurred at the intersection of Louisiana Highway 27, a state highway, and the Dave Dugas Road, a parish road, on May 15, 1976. He was proceeding east in his pickup on Dugas Road when he collided with an El Camino pulling a boat, which was being driven north on La. 27 by James Sudduth.
Hodges' petition alleges that his accident and resulting damages occurred through the joint negligence of the highway department and the police jury in failing to properly sign the extremely hazardous intersection. For traffic approaching from the west on Dugas Road, as Hodges was, the only control was a stop sign placed on the left side of the road. Hodges has retrograde amnesia, but the theory of his case is that, because of the placement of the sign and the failure to otherwise warn of the intersection, he did not stop and crashed into the El Camino.
The respective defendants denied liability and plaintiff requested trial by jury. His claims, as against USF&G, were tried to a jury. His claims against the State of Louisiana and the Calcasieu Parish Police Jury were tried by the trial judge. The jury found both the highway department and the police jury negligent, found Hodges not to be contributorily negligent, and fixed his damages at $900,000. The trial judge found the highway department and the police jury negligent, found Hodges not to be contributorily negligent, and fixed his damages at $746,862.25.
A rule was brought by plaintiff to reconcile the quantum verdicts (plaintiff wanted all verdicts fixed at $900,000), but the rule was denied and dismissed by the trial court.
A formal judgment was signed in favor of plaintiff and against the state and parish in the amount of $746,862.25, and against USF&G in the amount of $501,000. The verdict against the insurer was reduced to the amount of its policy limits, and there is no indication of any objection to this having been done.[2]
All defendants have appealed urging that the triers of fact erred in finding the highway department and the police jury negligent and erred further in failing to find Hodges contributorily negligent. Defendants also contend that the award of damages is excessive. Plaintiff has answered the appeal asking that the judgment be modified to increase the damages to $900,000.
Therefore, the issues before this court on appeal are: (1) negligence of the parish; (2) negligence of the state; (3) contributory negligence of Hodges; and (4) quantum of damages.
NEGLIGENCE OF THE PARISH
In considering the first issue, it must be remembered that Hodges, immediately prior to the collision, was traveling on a parish road, and that the accident occurred where the parish road crossed a state highway. Therefore, the first consideration is what duty is owed by the parish to those who use the parish roads. The Louisiana Supreme Court, in Pickens v. St. Tammany Parish Police Jury, 323 So.2d 430 (La., 1975) has said that:
"The duty owed is to exercise reasonable care to keep these public ways in such condition that travelers who are prudent and ordinarily careful will not be exposed to injury, day or night." 323 So.2d 432.
While the parish police jury is not the insurer of travelers on parish roads, ". . . it must keep these ways reasonably safe. . ." 323 So.2d 432.
There is no question, in the present case, that the parish was aware of the situation at the intersection. A police juror-elect, Samuel E. Bares, appeared before the road and bridge committee of the Calcasieu Parish Police Jury on February 23, 1976, called attention to the dangerous condition of the *1277 intersection and requested that a traffic light be installed. (TR. 715). Among others, the assistant parish engineer, Authur L. Darnsteadt, Jr., who was in charge of the sign program of the police jury, was present at the meeting.
On March 3, 1976, the Calcasieu Parish Police Jury passed a resolution calling on the state to rectify the unsafe condition at the intersection. The parish engineer, Rodney M. Vincent, admitted under cross examination that between February 23, and May 15, 1976, (the date of the accident) the parish did nothing to alleviate the problem other than to pass the resolution. (TR. 999). Mr. Vincent admitted knowing that, under the procedures of the State Highway Department, it would take time to obtain state action and admitted that signs could have been posted by the parish, if not on the state right of way, then on the parish right of way which would have been 51 feet from the center line of La. 27.[3] There is no question the parish could have posted "stop ahead" and "reduce speed" signs on Dave Dugas Road.
The facts establish a violation of the parish's duty to motorists on Dugas Road and in particular to the plaintiff, George Hodges. The failure of the parish to warn motorists, in some manner, of the intersection was a substantial cause in fact of the accident. The trial court and the jury did not err in holding that negligence on the part of the parish was established.
NEGLIGENCE OF THE STATE
As long ago as 1967, a state engineer recommended that an island be constructed on the right side of Dugas Road at the intersection of La. 27 to accommodate a stop sign on the right. (See testimony of Richard M. Flanagan, District Traffic Engineer, TR. 984).
It is clear that the state knew the sign was on the left and that the intersection was hazardous.
In response to the resolution of the police jury, a study of the intersection had been conducted on May 12, 1976, and a recommendation was made on May 28, 1976, that a flashing beacon light be put in. (TR. 488). Also, the State Highway Department had a collision report which indicated that the intersection was one of the six most hazardous in a six parish area and the second most dangerous in Calcasieu Parish. The report reflected that, in slightly less than four years, there had been nineteen accidents at the corner of La. 27 and Dugas Road. (TR. 496).
The local sign superintendent of the State Highway Department admitted that he knew and had known for several years that the sign was on the left side. (TR. 670, 677).
The district engineer of the State Highway Department, Olivier Broussard, III, testified that, to his knowledge, there had been signs on both the right and the left at the intersection in the 1950's, but that he does not know when the sign on the right disappeared.
The Uniform Traffic Control Devices Manual (P-8), which has been adopted by the Louisiana Department of Highways, mandates placement of a stop sign as follows:

*1278 "Where only one stop sign, STOP or YIELD, is used, it shall be on the right-hand side of the traffic lane to which it applies." (P-8, page 35).
Counsel for the department of highways correctly maintains that: (1) the duty of the department is only to see that the highways are reasonably safe for persons exercising ordinary care; (2) that the department is not the insurer of travelers on the highways; and (3) that the department is liable only when (a) the hazardous condition was patently or obviously dangerous to a reasonably careful and prudent driver and (b) the department had notice of the defect. See, for example, Laborde v. Louisiana Department of Highways, 300 So.2d 579 (La.App. 3 Cir. 1974), writ denied, La., 303 So.2d 182. In the present case, the question of notice requires no discussion. The highway was not reasonably safe and the condition was obviously dangerous. The maintenance of the sign on the wrong side of the road was in violation of the department's own manual. The accident history at the site indicates a very hazardous situation. The study by the department's own employees (see testimony of Clement Ray Fontenot, Engineering Aide, and Richard M. Flanagan, District Traffic Engineer) resulted in a recommendation that a flashing beacon be installed to rectify the hazardous condition.[4]
The department urges that the trial court and jury erred, as a matter of law, in holding the department responsible for maintenance of a stop sign where a parish road intersects a state highway, citing Fontenot, Ind. v. State, etc., 346 So.2d 849 (La.App. 1 Cir. 1977), writ denied, La., 349 So.2d 1270. It is argued that, under the provisions of LSA-R.S. 32:235(B), the parish is responsible for placing traffic signs on highways under its jurisdiction. The evidence is that the sign erected on the left-hand side at the intersection was put up by the state; it had initials of state employees on the back. (TR. 684). The testimony of the witnesses, Flanagan, Vincent and Darnsteadt, indicate that, at all intersections of state highways and parish roads in Calcasieu Parish, the department of highways has undertaken the responsibility of erecting stop signs. The engineer and assistant engineer for Calcasieu Parish indicated that they operated under the assumption that the state would require permission to be granted before the parish could erect signs on the state right of way at an intersection. Where the state undertakes the job of signing an intersection, it must do so properly with due care for the traveling public. Therefore, we respectfully disagree with the analysis by our brothers of the First Circuit in Fontenot, supra.
There was no error in finding that the state was negligent.
CONTRIBUTORY NEGLIGENCE
The defendants argue that Hodges was guilty of contributory negligence in failing to see: (1) the stop sign; (2) the intersection; and (3) traffic on Highway 27. Presumably, these same arguments were made to the trial court and the jury. The record indicates that Hodges may not have seen the stop sign because it was on the left instead of on the right where it is normally expected to be. According to a witness on behalf of plaintiff, Dr. John E. Baerwald, an expert transportation and traffic engineer on the faculty of the University of Illinois, the traffic intersection in question was "Very dangerous." (TR. 917). This expert's testimony was that "driving expectancy" or unconscious habit makes a driver look for a traffic control device in a familiar place; hence, the importance of uniform placement, since a driver is much less likely to see a stop sign on the wrong side of the road.
As to not recognizing the intersection, the pictures in the record reflect that, due to the physical situation at the corner, the intersection is not readily recognizable and it is not apparent that La. 27 is a favored road. Dr. Baerwald confirmed that a driver on Dugas Road could not be sure he was approaching a paved roadway, much less an important intersection. (TR. 930).
*1279 As to the suggestion that Hodges should have seen vehicles in the intersection prior to the accident, there was general testimony about traffic on La. 27, but the record does not indicate that there was traffic which should have been readily observed by a motorist in Hodges' position.
There was also testimony by one witness that Hodges was leaning over his steering wheel and by another that Hodges was slumped over the wheel. One of these witnesses said that Hodges may even have been asleep, although he could not be certain. The burden of convincing the triers of fact on the issue of contributory negligence rested with the defendants and they failed to convince either the trial court or the jury in this instance. We cannot say that there was manifest error or that the trial court and jury were clearly wrong in concluding that Hodges was not contributorily negligent.
CONCLUSION
In discussing the issue of contributory negligence, defendants suggest that a corollary issue involves "proximate cause." We believe that the inquiry would be whether the alleged substandard conduct (the negligence) of the state and parish was a cause in fact of the accident. All of the facts of the accident must be considered to answer this question. The principal features are that the stop sign was on the wrong side of the road and that the state and parish failed to erect any warning signs or electric flashers to identify the hazardous intersection. Apparently, Hodges did not slow or stop for the intersection. As counsel for plaintiff suggests, the well-established rule of law is that a person is presumed to have acted with due care for his own safety. The obvious conclusion is that Hodges did not see the misplaced sign and had no other warning. Therefore, the acts and omissions of the state and parish constitute the cause in fact of the accident.
QUANTUM
George Hodges was a 53 year old electrician at the time of the accident. He had earned $16,225 in 1975, the year before the accident. His injuries were well summarized by Dr. Harry Starr, a neurosurgeon of Beaumont, who said that when he first saw Hodges on June 24, 1976, some six weeks after the accident, he was a severely and critically ill patient. His injuries were listed as follows: a severe concussion or "knockout" of the brain and severe contusions or bruising of the brain, particularly the brain stem; facial injuries with numerous cuts; a neck injury (subluxation between the fifth and sixth cervical vertebrae); fractures of both shoulder blades; fracture of ribs; contusion and bruising of the lungs; a severe injury to the right armpit which tore the main artery and vein; injury to both shoulders with an acromioclavicular separation on the left; and lesser bruises and contusions on the rest of the body.
According to Dr. Walter P. Ledet, Jr., a general and vascular surgeon who saw Hodges in the emergency room immediately after the accident, Hodges was unconscious and in critical condition. Among other injuries, Dr. Ledet noted that the right arm had almost pulled off and that, following the five or six operative procedures before Hodges was transferred to Beaumont, the plaintiff suffered post-operative pneumonitis, a urinary tract infection and pleursy in the right lung.
It is uncertain how long Hodges was unconscious; he was described by Dr. Starr as being "semi-conscious" on June 24. His consciousness improved during his lengthy stay in the hospital. He was hospitalized until August 17, 1976, or slightly more than three months. Dr. Starr stated his opinion that Hodges has permanent residuals from the accident which disable him from doing the work of an electrician or any type of gainful employment requiring physical effort. As a result of his brain injury, Hodges developed "bulbar" or "pseudobulbar" palsy which manifests itself in bulging eyes; partial paralysis of the tongue, lips, and throat which causes difficulty in swallowing or coughing and which also causes slurred and explosive speech, as well as uncontrolled emotionality.
*1280 Fortunately for the plaintiff, his requirements for future medical treatment are not substantial, although he has increased susceptibility to respiratory complications. Dr. Starr expressed the opinion that it is doubtful that the palsy and plaintiff's right arm, which is weak as a result of the accident, will ever improve further. (TR. 626). Other residuals include atrophy of the right hand, numbness in both hands, lack of balance in walking and inability to raise arms above the shoulders.
According to P-49, the plaintiff's medical bills totaled $36,893.25.
The jury awarded $900,000 to the plaintiff; the trial court fixed damages at $746,862.25. The award of $900,000 against USF&G was reduced to $501,000 because of its policy limits. The effective amount of the judgment is that awarded by the trial court because the jury tried only the direct action against the insurer and its award exceeded the policy limits. Since there has been a reduction to the amount of the policy limit of USF&G, there is no occasion for this court to consider the differential between the judge's award and the jury's award. In other words, there is no valid jury award against the insurer (which was the only defendant whose case the jury was trying) in an amount over the USF&G policy limit.
After considering the permanent and devastating injuries suffered by George Hodges, his pain and suffering, his loss of wages, past and future, and his medical expenses, we certainly cannot say that the amount awarded is excessive. We affirm the judgment of $746,862.25 against the State of Louisiana and Calcasieu Parish as well as the judgment against USF&G of $501,000. As to plaintiff's answer urging that the judgment be increased to $900,000, we cannot say that the amount fixed is inadequate, and it is denied.
For the reasons assigned, the judgment of the trial court is affirmed and the costs of the appeal are taxed against the Parish of Calcasieu, USF&G and the State of Louisiana.
AFFIRMED.
NOTES
[1] Now the Department of Transportation and Development.
[2] See USF&G policy, P-7, at TR. 406. The limits are $500,000 for bodily injury; the additional $1,000 is property damage to Hodges' pickup truck.
[3] Throughout the trial the parish officials as well as the state engineers, seemed to believe the stop signs were the business of the state, despite the provisions of LSA-R.S. 32:235 B. (as found in Act 273 of 1968, in effect on date of accident), as follows:

"Local municipal and parish authorities in their respective jurisdictions shall place and maintain such traffic control devices upon highways under their jurisdiction as they may deem necessary to indicate and to carry out the provisions of this Chapter, regulations of the department and director of public safety adopted pursuant hereto, and local traffic ordinances adopted pursuant to the authority granted by R.S. 32:41 and 32:42. All such traffic control devices hereafter erected shall conform to the department's manual or specifications. If any such device hereafter erected by a political subdivision of this state fails to conform to the manual or specifications, payment of any funds allocated to said political subdivisions of this state shall be withheld by the department of highways until such time as the standards established by the department are complied with."
Compare the interpretation of this statute by the Court of Appeal, First Circuit, in Fontenot, Ind. v. State, etc., 346 So.2d 849, writ denied, La., 349 So.2d 1270, discussed supra.
[4] The beacon was authorized June 16, 1976, and installed November 4, 1976.