408 So.2d 300 (1981)
Monty D. DARBONNE, Admr., etc., Plaintiffs-Appellees,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., et al., Defendants-Appellants.
No. 8562.
Court of Appeal of Louisiana, Third Circuit.
December 16, 1981.
*302 Fruge & Vidrine, Christopher B. Fruge, Ville Platte, for defendants-appellants.
Brinkhaus, Dauzat & Falgoust, Jimmy L. Dauzat, Opelousas, McBride & Foret, Glynn Rozas, Lafayette, for defendant-appellee.
Steven Broussard, Lake Charles, Glen A. James, Sulphur, for plaintiffs-appellees.
Before FORET, SWIFT and LABORDE, JJ.
LABORDE, Judge.
This is one of two cases which were consolidated for trial. We render a separate opinion in the companion case on this date.[1]
These consolidated suits for damages for personal injuries arise out of an intersectional[2] collision near the town of Eunice in St. Landry Parish, Louisiana, between an automobile being driven by Monty Darbonne and an automobile being driven by Velma Vidrine.
On the morning of April 7, 1977, at approximately 8:00 A.M., Monty Darbonne was driving his father-in-law's automobile north along Eighth Street approaching that street's intersection with Louisiana Highway 13. Monty's passengers included his wife, Peggy; their four minor children: Rodney, Keith, Terry and Vivian; Monty's half brother, James Bertrand; and Peggy's brother, Lawrence Boudreaux, Jr. At the time of the accident, both James and Lawrence were also minors.
Eighth Street is a blacktop, two lane road which runs generally in a north-south direction. Louisiana 13 is a major highway that also runs roughly in a north-south direction. When Louisiana 13 reaches Eighth Street, it begins to curve at approximately a 70 to 90 degree angle to the east. Eighth Street and Louisiana 13 form a "T" intersection near the midpoint of this curve with Louisiana 13 being the favored highway. Traffic proceeding from Eighth Street onto Louisiana 13 is controlled by a stop sign.
The accident occurred when Monty failed to observe the stop sign on Eighth Street at its intersection with Louisiana 13, and continued on in a northerly direction, colliding with the automobile being driven by Velma Vidrine. Mrs. Vidrine, who was headed in a southerly direction, was in the process of negotiating the curve on Louisiana 13 when the collision occurred. She was traveling alone in her automobile.
All occupants of both vehicles were injured in the accident.
As a result of this accident, two separate lawsuits were filed and later consolidated for trial. In one, Monty and his wife Peggy sued Velma Vidrine, the City of Eunice, the St. Landry Parish Police Jury (Police Jury), and the Department of Transportation and Development (Department) for their personal injuries and for damages to the community existing between them.
In the other suit, Monty, as administrator of the estate of his minor children and as tutor of his minor half brother, sought damages for the personal injuries of these minors. He was joined by Lawrence Boudreaux, Sr., as administrator of his minor child's estate seeking damages for the *303 child's personal injuries and recovery of medical expenses. Made defendants in this second suit were Monty Darbonne; the insurer of the automobile Monty was driving, State Farm Mutual Automobile Insurance Company (State Farm); Velma Vidrine; the City of Eunice; the St. Landry Parish Police Jury and its insurer, Travelers Insurance Company (Travelers); and the Department of Transportation and Development.
Prior to trial on the merits, the claims against the City of Eunice were dismissed by summary judgment. The basis for the ruling was that the intersection in question was beyond the City's corporate limits. No appeal was taken from this judgment.
Also prior to trial, the claims against Monty, filed by him on behalf of his minor children, were dismissed by a judgment sustaining an exception of no right or cause of action. No appeal was taken from this judgment.
The case proceeded to trial on the merits, following which all claims against Velma Vidrine were dismissed. No appeal was taken from this judgment.
In its written reasons for judgment, the trial court concluded that the intersection and its approaches were hazardous, holding the Police Jury, Travelers, and the Department liable therefor. The trial court further held that Monty was guilty of contributory negligence which barred his recovery and made him liable in solido to his half brother and brother-in-law who were guest passengers in the car he was driving. As to Peggy, the court held that inasmuch as she had executed an unrestricted release in settling her claims, she was precluded from further recovery against the remaining defendants. As to the claims of the minors, the trial judge awarded them damages holding State Farm, the Police Jury, Travelers, and the Department liable in solido but restricting each minor's recovery against State Farm to a pro-rated share of the $31.71 which remained unpaid under State Farm's policy.[3]
Lawrence Boudreaux, Sr. was awarded $857.40 against Monty, State Farm, the Police Jury, Travelers, and the Department.
Finally, as to the various third party claims, the trial court held that the Department was entitled to contribution from Monty, the Police Jury, and Travelers.
From this judgment, the Police Jury, Travelers, and the Department appealed contesting liability and quantum. The individual plaintiffs in both lawsuits answered the appeal.
The issues presented by this appeal concern the liability of the Police Jury, the liability of the Department, the negligence of Monty Darbonne, the excessiveness of damages awarded, and the frivolity of the appeal taken by the Department.

DUTY OF THE POLICE JURY AND THE DEPARTMENT
The trial court in its written reasons for judgment concluded:

*304 "That the intersection and its approaches were hazardous to such an extent that the public entities responsible therefor are liable. That the responsibility of both the parish and the state for the maintenance of the intersection and its 8th Street approach was so intertwined as to render both liable as substantive causative factors."
This brings us to the crucial question of whether the lower court was clearly wrong in its conclusions.
As we examine the facts, we must keep in mind the extent of the obligations imposed by law upon the Police Jury and upon the Department in the performance of the duties of each to maintain the highways in a reasonably safe condition.
The Police Jury, in maintaining a public rural road system, has a duty to maintain the roads and traffic signs in a reasonably safe condition and to warn motorists of unusually perilous conditions such as improperly marked intersections. LSA-R.S. 32:235; Wall v. American Employers Insurance Company, 215 So.2d 913 (La.App. 1st Cir. 1968), writ refused, 253 La. 325, 217 So.2d 415 (1969); Vervik v. State, Department of Highways, 302 So.2d 895 (La.1974); Andrus v. Police Jury of Parish of Lafayette, 303 So.2d 824 (La.App. 3rd Cir. 1975). To hold the Police Jury liable for breach of this duty, it must be shown that it had actual or constructive knowledge of the danger and that it failed to correct or to warn motorists of this danger. Harrison v. State of La., Dept. of Highways, 375 So.2d 169 (La.App. 2d Cir. 1979).
The Department has a similar duty succinctly stated by this court in the case of Doucet v. State, Department of Highways, 309 So.2d 382 (La.App. 3rd Cir. 1975) as follows:
"The duty of the Department of Highways is only to see that state highways are reasonably safe for persons exercising ordinary care and reasonable prudence. It is liable for damages only when the evidence shows (1) that the hazardous condition complained of was patently or obviously dangerous to a reasonably careful and ordinarily prudent driver, and (2) that the department had notice, either actual or constructive, of the existence of the defect and failed within a reasonable time to correct it." (Citations omitted)
We first consider whether the intersection at issue, with its uncommon, although not unique design and signing, is reasonably safe for persons exercising ordinary care and reasonable prudence.
Both Louisiana 13 and Eighth Street run roughly in a north-south direction. Just as these two highways are about to connect, Louisiana 13 curves to the east at approximately a 70 to 90 degree angle and continues on. At the same time, the throat of Eighth Street widens out and flares to the east until it abuts Louisiana 13 forming a "T" intersection. At this point, Eighth Street terminates. The "T" intersection occurs at an angle in the curve of Louisiana 13 and to the east of both highways. Louisiana 13 is the favored highway and traffic entering it from Eighth Street is controlled by a stop sign. To guide north bound traffic from Eighth Street to the stop sign controlling its intersection with Louisiana 13, double yellow lines are used. The neutral ground in this widened throat area is painted white.
The layout of the intersection is odd or unusual in that as the throat of Eighth Street is widened, its left lane actually connects with Louisiana 13 and in fact, traffic proceeding south on Louisiana 13 will wind up on Eighth Street unless the driver steers his vehicle to the east in order to negotiate Louisiana 13's curve.
The problemrevealed by the photographs of the intersection introduced into evidence and highlighted by testimony of state troopers familiar with the intersection, by expert testimony and by testimony elicited from persons living near the intersectionis that an unfamiliar driver proceeding *305 north on Eighth Street is lured into believing that that highway merely continues on notwithstanding the fact that it ends at the intended intersection positioned to the east. The following factors further aggravate or at least complicate matters for the unfamiliar driver. Because the intended intersection is positioned to the east of Eighth Street's north-south course, the stop sign located at the intersection is visible to the driver only if he veers to the east. Stated another way, if the driver continues straight ahead as he perceives Eighth Street continues, he will never see the stop sign. In addition, the approach from Eighth Street to the intersection lacks a stop ahead sign, or a sign indicating its junction with Louisiana 13, both of which are mentioned in the highway manuel. Also the neutral ground in the throat area, although it is painted, is not raised, signed or reflectorized. The result is that it serves as a minimal aid or channelizing device in guiding the driver to the intersection and keeping him out of this neutral area.
We find the record adequately supports the trial court's conclusion that the intersection and its approaches were hazardous.

LIABILITY OF THE POLICE JURY AND THE DEPARTMENT
Our next inquiry is who is responsible for the maintenance of this intersection and its Eighth Street approach. The trial court, after finding that the maintenance responsibility of the Police Jury and of the Department was intertwined, held both entities liable.
At the trial all parties agree that either a city, a parish, or the State is responsible for highways in Louisiana. The City of Eunice is out, the trial court having granted its motion for summary judgment. Thus, either the Police Jury, or the Department, or both are responsible for these highways.
On appeal, the Police Jury argues that the design, maintenance and control of the intersection and its Eighth Street approach was the responsibility of the Department. In support of its argument, the Police Jury introduced its maintenance records in an effort to show that it did not perform any maintenance work whatsoever on Eighth Street. The Police Jury further contends that anytime maintenance work was neededit was performed by the Department. In addition, the secretary of the police jury and one of its police jurors testified that Eighth Street was not delineated as a parish roadway on its map of roadways.
Upon our review of the evidence, it reveals that the maintenance records relied upon by the Police Jury were not thoroughly kept until 1979 and that prior to that time, they do not adequately indicate and reflect maintenance work performed by it. The accident occurred in 1977. In addition, the record reveals that although maintenance work on Eighth Street was performed by the Department, it was done so at the request of other political entities. It was also admitted at trial that the map of roadways of St. Landry Parish included parish roads as designated by the Police Jury leaving open the possibility for the trial judge to view this exhibit as self-serving in nature.
Upon our review, we find a reasonable evidentiary basis to support the trial court's conclusion that the Police Jury was responsible for Eighth Street.
The department concedes that the intersection, as part of Louisiana 13, once was its responsibility but argues that in 1976, prior to the accident, it abandoned this section of that highway. The Department also argues alternatively that if the intersection is unreasonably hazardous, it is due to improper signing of Eighth Street which is under the responsibility of the Police Jury.
In reviewing the record, we find that the abandonment referred to by the Department was ineffective because it was improper in form. In any event, the Department continued to maintain that section *306 until late 1978 or early 1979 and thus was maintaining it at the time of the accident. There is an abundance of evidence showing that the Department had control of the design, signing and marking of this intersection leaving little doubt that its maintenance responsibility was that of the Department's.
Upon our review, we find a reasonable evidentiary basis to support not only the trial court's conclusion that the Department was responsible for maintenance of the intersection but also its conclusion that the responsibility of both the parish and the state for the maintenance of the intersection and its Eighth Street approach was so intertwined as to render both liable.
To hold these entities liable, it must be shown that they had knowledge, either actual or constructive, of this hazardous condition. The record shows that similar accidents resulting from poor stop-sign observance had occurred at this intersection and that the accident reports compiled as a result were filed with the Department. Also, because of the frequency of accidents, studies of the intersection were performed and filed with authorities of the Department. Further, Murphy Richard, a police juror, testified that he received several complaints from local residents concerned about the intersection's hazardous condition.
We find the record adequately establishes the Police Jury's and the Department's knowledge of these hazardous conditions.
The arguments by these entities that they should not be held liable lack merit.

MONTY DARBONNE'S CONTRIBUTORY NEGLIGENCE
The law is clear regarding the responsibility of a motorist. He is under a duty to act as a reasonable and prudent person would under the circumstances. As part of this duty, he is charged with keeping a proper lookout, seeing what he should see, maintaining proper control of his vehicle and observing traffic signs.
The question of whether Monty was contributorily negligent is close. On one hand, there is evidence showing that this was the first time Monty had traveled Eighth Street and encountered its intersection with Louisiana 13. In addition, the record shows that these painted yellow lines and white areas guiding his way were somewhat faded and worn.
On the other hand, it was a clear, dry day and the markings, though faded, were still visible. Several persons testified that if these visible markings were followed, the motorist would arrive at the intended intersection from where the stop sign was clearly visible. Monty testified that had he seen the double yellow lines, he would not have traveled across them, he simply did not observe them, or the painted neutral ground, or the stop sign.
Under these circumstances, we cannot say that the trial court manifestly erred in finding Monty to be contributorily negligent. We further find that his negligence was a substantive cause-in-fact and agree that it bars his recovery.

STRICT LIABILITY
By way of supplemental brief, plaintiffs argue that under LSA-C.C. art. 2317, the Police Jury and the Department are strictly liable to them and further that the defense of contributory negligence is no bar to this recovery.
We disagree. Without elaborating on the plaintiffs' right to recover under Article 2317, we simply note that one of the defenses to recovery thereunder is "victim fault" which has been equated to contributory negligence. Wilkinson v. Hartford Accident & Indemnity Co., 400 So.2d 705 (La. App. 3rd Cir. 1981); Edwards v. State, Department of Transportation & Development, 403 So.2d 109 (La.App. 3rd Cir. 1981), *307 LeBlanc v. State, Dept. of Hwys., 405 So.2d 635 (La.App. 3rd Cir. 1981). Thus, we hold that Monty's conduct amounting to contributory negligence also amounts to "victim fault" barring his recovery under Article 2317.

EXCESSIVE DAMAGES
There were six minor passengers in the Darbonne vehicle. The trial court awarded general damages to each. (See Footnote 2) On appeal, the Department contends that there is insufficient evidence in the record upon which to base any general damage award and further that the awards are excessive. We disagree.
In addition to the testimony of Monty and Peggy Darbonne regarding the injuries of the minors, the trial court also had before it the medical reports of their treating physicians and the hospital records concerning them. Viewed together, these provided a sufficient basis upon which general damage awards could be assessed.
It is well settled that in making its award, the trial court is granted "much discretion" and that on appeal, that award will not be disturbed unless the record clearly reveals that the trier of fact abused its much discretion. Reck v. Stevens, 373 So.2d 498 (La.1979); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977).
We have reviewed the evidence relating to the amount of damages assessed by the trial court and conclude that the Department's argument of excessiveness is without merit.

FRIVOLOUS APPEAL
Plaintiffs answered the appeal requesting damages and attorney's fees from the Police Jury and from the Department for a frivolous appeal pursuant to LSA-C. C.P. art. 2164. By way of brief, plaintiffs concede that the Police Jury's appeal was not frivolous but still maintain that the Department's appeal was.
Under the jurisprudence construing art. 2164, we see no basis for finding that the appeal taken by the Department was frivolous. Damages and attorney's fees are denied.
For the above and foregoing reasons, the judgment of the trial court is affirmed. Costs in the amount of $1739.40 are assessed one half to the St. Landry Parish Police Jury and one half to the Department of Transportation and Development.
AFFIRMED.
*308 
NOTES
[1] The companion case is Monty D. Darbonne, et al v. Department of Transportation and Development, et al, 408 So.2d 309 (La.App. 3rd Cir. 1981).
[2] A drawing of this intersection is appended to this opinion.
[3] State Farm had $20,000.00 in coverage and had practically exhausted these limits by virtue of payments made to Velma Vidrine, Peggy Darbonne, and the minors. The trial court held that the settlements effected by State Farm with the minors were not binding since they were not court approved but the amounts received by them were nonetheless allowed as a credit to the remaining defendants in the judgment against them. The amounts ultimately awarded each minor, after subtracting these credits from the initial awards are listed below:

 INITIAL AWARD LESS CREDIT FINAL AWARD
Keith Darbonne $10,000.00 $973.50 $9,026.50
Rodney Darbonne 4,500.00 604.65 3,895.35
Terry Darbonne 2,500.00 211.64 2,288.36
Vivian Darbonne 3,000.00 177.50 *2,822.50
James Bertrand 7,762.82 688.25 7,074.57
Lawrence Boudreaux, Jr. 5,500.00 320.00 5,180.00
* The trial court awarded Vivian $2,850.50, incorrectly substracting the credit from the initial
award. This mathematical error is corrected on appeal in discharge of our duty of doing justice
on the record. LSA-C.C.P. art. 2164.