476 So.2d 953 (1985)
Jules Joseph DAIGLE, Jr., et al.
v.
Doyle HANSON, et al.
Earl HANSON
v.
Doyle HANSON, et al.
Nos. 84 CA 1300, 84 CA 1301.
Court of Appeal of Louisiana, First Circuit.
October 8, 1985.
*955 Terry L. Rowe, of Martin & Taulbee, Lafayette, for plaintiffs-third appellants Jules Joseph Daigle, Ralph Daigle, Albert Daigle, David Daigle and plaintiff-appellee Earl Hanson.
William A. Stark, of Weeks & Stark, Houma, for defendant-first appellant State of La., Dept. of Transp. & Development.
Coleman T. Organ, Metairie, for defendant-second appellant Lafourche Parish Council.
Robert E. Peyton, of Christovich & Kearney, New Orleans, for defendant-appellee Doyle Hanson, NOWSCO Services, Inc.
Before GROVER L. COVINGTON, C.J., and WATKINS, and SHORTESS, JJ.
SHORTESS, Judge.
These consolidated suits arise out of an intersectional collision which occurred on December 7, 1981, in Lafourche Parish, at the intersection of Hamilton Road and Louisiana Highway 308. Laura Hanson (decedent) was driving a 1981 Chevrolet pickup truck in an easterly direction on Hamilton Road around 7:00 p.m. Doyle Hanson was driving a large ten-wheel truck fitted with a liquid nitrogen tank and weighing between 35,000 and 50,000 pounds in a northerly direction on La. 308. Hamilton Road and La. 308 at this intersection are twolane highways. La. 308 is the superior road, and traffic is controlled by means of stop signs which face both eastbound and westbound traffic on Hamilton Road. A collision occurred between these two vehicles at this intersection. The point of collision was in the northbound lane of La. 308 which was being used by Doyle Hanson. Unfortunately, decedent was killed instantly as a result of the accident.
Wrongful death actions were brought by her surviving spouse, Earl D. Hanson (Hanson), and her four major sons, Jules J. Daigle, Jr., Albert Daigle, David Daigle and Ralph Daigle (Daigles).
Upon completion of trial, the court dismissed Doyle Hanson, his employer and his insurance company after finding no negligence on Doyle Hanson. The trial court took the balance of the case under advisement and subsequently issued reasons for judgment. Therein, it ruled in favor of the plaintiffs in both suits and cast the Lafourche Parish Council (Lafourche) and the State of Louisiana through the Department of Transportation and Development (DOTD), jointly and in solido.
Succinctly, the trial court found Lafourche guilty of negligence, DOTD guilty of negligence, no contributory negligence by decedent, and it found LSA-C.C. art. 2317 strict liability on both Lafourche and DOTD. It awarded the surviving spouse $7,500.00 for loss of love and affection, $35,000.00 for loss of support, and funeral expenses of $3,982.52. It denied the Daigles' claim for loss of support entirely but granted each son $15,000.00 for loss of love and affection.
Lafourche and DOTD have both suspensively appealed. Plaintiffs in each suit have answered the appeals and seek an increase of quantum. For organizational simplicity, we will treat the various issues on appeal by relating same to the trial court's various findings. One issue, however, must be addressed separately, inasmuch as it was not dealt with in the trial court's reasons for judgment, i.e., Lafourche's assignment of error that the trial court erred in denying to it a jury trial.
Lafourche argues that its constitutional rights under the Louisiana and Federal constitutions guaranteeing equal protection of the laws were violated when the trial court struck its demand for jury trial. In Descant v. Rapides Parish Police Jury, 409 So.2d 1226 (La.1982), our Supreme Court had occasion to interpret the provisions of LSA-R.S. 13:5105, which provides:

*956 No suit against the state or a state agency or political subdivision shall be tried by jury.
In Descant, the Rapides Parish School Board requested a trial by jury in connection with a suit that Descant had filed against it for damages. Therein, in a per curiam, it was held:
We find that the language of La.R.S. 13:5105 is clear: "No suit against the state or a state agency or a political subdivision shall be tried by a jury." This is a suit against such an entity. Hence, the statute prohibits a trial by jury.
Recently, the Supreme Court in Rudolph v. Massachusetts Bay Ins. Co., 472 So.2d 901 (La.1985), reversed a lower court's holding that LSA-R.S. 13:5105 was unconstitutional because it denied plaintiff a jury trial and violated his right to due process and equal protection. The court said:
We conclude that the Legislature could have rationally believed that this classification of tort victims, who cannot require a jury trial, is related to achieving the legitimate state objectives of the protection of the state treasury and the facilitation of the judicial process. Thus, La. Rev.Stat.Ann. § 13:5105 does not violate the equal protection clause of the United States Constitution. Our conclusion here, we believe, is supported by the recent federal action in Gianechini v. City of New Orleans, 459 U.S. 802, 103 S.Ct. 24, 74 L.Ed.2d 40 (1982). In that case, the United States Supreme Court dismissed an appeal "for want of a substantial federal question" which had asked that La.Rev.Stat.Ann. § 13:5105, the very statute under consideration here, be declared in violation of the equal protection provision of the United States Constitution.
The trial court was correct in denying Lafourche a jury trial.
NEGLIGENCE OF DOTD AND LAFOURCHE
LSA-R.S. 32:235(B) imposes upon a parish the duty to erect and maintain traffic control devices such as stop signs on roads under its jurisdiction.[1] This duty must be exercised with a "high degree" of care. Ross v. Noble, 442 So.2d 1180 (La. App. 1st Cir.1983). A parish acts negligently when a defective traffic control device causes injury and the parish has either actual or constructive notice of the defective condition but fails to correct it within a reasonable time. Netterville v. Parish of East Baton Rouge, 314 So.2d 397 (La.App. 1st Cir.1975), writ denied, 318 So.2d 58 (La.1975).
Hamilton Road was within the jurisdiction of Lafourche Parish. The missing stop sign controlled traffic on that road and created a patently dangerous condition. The sign had been missing for at least two weeks prior to the accident. The trial court properly concluded that Lafourche had constructive knowledge of the hazardous condition and did not remedy it. Thus, Lafourche was negligent and liable for damages resulting from its breach of duty.
The trial court also found DOTD negligent and held that it assumed responsibility for placing and maintaining stop signs at intersections such as the one in question. The evidence shows that DOTD regularly erected new and replaced missing stop signs facing parish roads where they intersected with state highways. Nonetheless, DOTD argues that all questions of responsibility for maintenance of the stop sign on Hamilton Road are resolved by LSA-R.S. 32:235(B). It cites the interpretation *957 of the statute in Jerry Joseph Fontenot, Ind. v. State Through Department of Highways, 346 So.2d 849 (La.App. 1st Cir. 1977), writ denied, 349 So.2d 1270 (La. 1977), reversed on other grounds, 355 So.2d 1324 (La.1978), as support for the proposition that responsibility for such signs rests exclusively with the Parish. Fontenot can be distinguished from this case, however. In Fontenot, there was no evidence of any state maintenance of stop signs on parish roads. This case presents a different factual situation. Witnesses for DOTD and Lafourche testified that DOTD employees routinely installed and maintained stop signs facing parish roads where they intersected with state highways.
In Fontenot, it was possible to find that the Parish alone was liable because there was no indication that the State had done anything to assume responsibility. A fact situation more akin to the one in question here appeared in Hodges v. State Department of Highways, 370 So.2d 1274 (La. App. 3rd Cir.1979), writ denied, 374 So.2d 660, 661 (La.1979). In Hodges, a stop sign facing a parish road at its intersection with a state highway was placed on the left instead of the correct, right side of the road. At issue was the negligence of the Parish and the State in failing adequately to sign the intersection. The court ruled that both governmental agencies were negligent, basing the State's liability on the State's actions. As is the case here, in Hodges there was evidence that the State had erected the sign. As is the case here, there was evidence that the State had undertaken responsibility to sign intersections of state and parish roads. As is the case here, there was evidence that parish officials believed the State must grant permission before they could install stop signs at such intersections.
The Hodges court concluded that LSA-R.S. 32:235(B) did not preclude a finding of negligence on the part of the State. Rather, it reasoned that the State by its actions had assumed responsibility for signs at these intersections. With that responsibility comes a duty, owed to the public, to protect against risks caused by improper signing. Hodges, 370 So.2d at 1278. There is ample evidence here to justify the trial court's ruling that DOTD had undertaken the responsibility for placing and maintaining signs at the intersections of state and parish roads in Lafourche Parish. The failure to replace the missing sign was a breach of the State's duty as it was enunciated in Hodges. The breach was a cause in fact of the decedent's death. Under these circumstances, the trial court was not clearly wrong in holding the State liable.
DOTD and Lafourche both argue that the other is the negligent party because the duty was imposed only on that other party. The trial court rejected these assertions and found joint liability in that both Lafourche and DOTD owed the duty to the public. The finding of concurrent liability raises this question: Does the State's duty completely supplant the duty of the Parish? The answer is that rather than relieving Lafourche of its duty, DOTD joined the Parish in its obligation to maintain the stop sign. DOTD's behavior did not render LSA-R.S. 32:235(B) ineffective. Instead, the responsibilities of each for the maintenance of the intersection became "so intertwined as to render both liable." Darbonne v. State Farm Mutual Automobile Insurance Co., 408 So.2d 300, 306 (La.App. 3rd Cir.1981). The holding in Hodges is in accord, for there, as in Darbonne, both the State and the Parish were held liable for an accident at an improperly signed intersection of a state and parish road.
Lafourche emphasizes its employees' reliance on a 1976 letter from W.T. Taylor, Jr., then Director of the Department of Highways. Testimony showed that the letter advised the Parish not to alter signs on state highways without state permission. Lafourche officials believed this meant they were to have nothing to do with stop signs such as the one on Hamilton Road at Louisiana 308. Reliance on this letter did not absolve the Parish of its duty. First, the letter simply does not have a status equal to that of a statute or *958 promulgated regulation. Second, although the letter might be dispositive vis-a-vis the State and the Parish, under the duty-risk analysis, the authority with jurisdiction over the road owes its duty to the public and cannot escape it by reliance on a letter from another government agency. Hatcher v. State, Through Department of Transportation and Development, 467 So.2d 584 (La.App. 3rd Cir.1985). Third, the letter's subject is stop signs in an area other than the one in question here, and it forbids altering of signs on "State" highways. Thus it is at least unclear whether the letter refers to the stop sign facing Hamilton Road. Given that ambiguity, it is not appropriate for the Parish to ignore its statutory duty which demands a "high degree" of care. Ross at 1184.
The trial court was not clearly wrong in finding that both DOTD and Lafourche breached their duty to maintain the stop sign on Hamilton Road at Louisiana 308 and that both were negligent. The trial court also in its reasons for judgment found both Lafourche and DOTD liable under an alternate theory, i.e., strict liability under LSA-C.C. art. 2317.
Since we affirm the trial court's decision on the negligence issue, it is unnecessary for us to consider the issue of strict liability. We also agree that Lafourche's third party demand against DOTD was properly dismissed in view of the trial court's findings which are not clearly wrong.

CONTRIBUTORY NEGLIGENCE
In its reasons for judgment, the trial court disposed of this issue as follows:
CONTRIBUTORY NEGLIGENCE OF LAURA HANSON
Contributory negligence is an affirmative defense to a negligence tort action, and the party relying upon it has the burden of proving it by a preponderance of the evidence.
The accident which took Mrs. Hanson's life occurred at approximately 7:00 p.m. on December 7, 1981. The evidence shows that her truck's headlights were on, and that she was unfamiliar with the intersection in question. Tragically, we do not know why the decedent proceeded through the intersection in the manner in which she did. However, we do know that she was a hot-shot driver and asked her brother, Steve Aucoin, for directions to reach her delivery destination because she had never been there before. Mr. Aucoin testified that he instructed Mrs. Hanson that she should take Louisiana Highway 24 from Houma to Larose, then proceed in a northerly direction on Louisiana Highway 1 and turn right on Hamilton Street heading in an easterly direction onto the pontoon bridge across Bayou Lafourche to a stop sign at Louisiana Highway 308. She was then to proceed on Hamilton Road across 308 to her destination.
Mr. Aucoin further testified that he told Mrs. Hanson about only one stop sign at the intersection of Hamilton Road and Louisiana Highway 308. However, the evidence is clear that there are two controlled intersections after one crosses Bayou Lafourche. The first is a threeway stop on "old" Highway 308 (which parallels Bayou Lafourche and Louisiana Highway 1 on the opposite side) which was seemingly in place on the date of the accident, and the second is the stop sign at the intersection of "new" Louisiana Highway 308 and Hamilton Road which was obviously missing on the date of the accident.
Although the deceased may have been unfamiliar with the subject intersection, the evidence indicated she was not unfamiliar with Bayou Lafourche and the fact that Louisiana Highway 308 and Louisiana Highway 1 were roads that generally ran parallel and adjacent to the bayou in a north-south direction on the east and west sides, respectively.
It is reasonable to believe that Mrs. Hanson thought she had stopped at the appropriate stop sign, and since she was unfamiliar with the road and intersection, she had no reason to believe she was not the favored vehicle in the absence of any warning to the contrary.

*959 [Furthermore], there was conflicting testimony at the trial as to whether the intersection in question was readily recognizable to traffic on Hamilton Road approaching Louisiana Highway 308 from Bayou Lafourche. State Trooper, Barry Hebert, who investigated the accident, and Mr. Terry Cavalier, who resides at the corner of Hamilton Road and old Highway 308, both testified that the subject intersection was visible. However, the testimony of Mrs. Lisa Loupe and Ms. Joan Callais, who both live in the neighborhood, was that the intersection was hard to see at night and not clearly visible.
Our courts have repeatedly held a motorist has no legal duty to anticipate an unusual hazard where there is no adequate warning, but has the right to presume the highway is safe for usual and ordinary traffic, even at night. McCoy v. Franklin Parish Police Jury, 414 So.2d 1369 (La.App. 2nd Cir.1982). Moreover, the well-established rule of law is that a person is presumed to have acted with due care for his own safety.
In the instant case, the evidence shows Mrs. Hanson was unfamiliar with the intersection, and as a night time motorist, she was entitled to assume that the roadway ahead was safe for travel and was not charged with the duty of guarding against the unmarked, defective intersection. There is insufficient evidence to show that her conduct was not in accord with that of a reasonably prudent person faced with similar conditions and circumstances. Therefore, this court finds that the defendants have failed to prove by a preponderance of the evidence contributory negligence of the deceased.
The trial court's findings on the issue of contributory negligence are not manifestly erroneous.

DAMAGES
In its reasons for judgment, the trial court handled the issue of quantum as follows:
Damages
Having concluded that the plaintiffs are entitled to recover from the defendants, the issue of damages will now be considered.
In a case such as this, involving a traffic accident resulting in the death of a person, it is apparent that no monetary award can be an adequate compensation to the survivors. Nonetheless, it is the duty of the trial court to arrive at a monetary evaluation of plaintiffs' loss which will provide fair and adequate compensation, insofar as monetary compensation can be provided.
It is an accepted principle of Louisiana law that each individual case stands on its own peculiar facts and circumstances for the appropriate quantification of damages. Within this framework for monetary awards, the individual elements of plaintiffs' claims are discussed below.
Earl D. Hanson: Loss of Support
The present value of the total economic loss sustained by Earl Hanson as a result of the death of Laura Hanson was estimated to amount to the sum of $187,819.50 by Mr. Donald W. Cornwell, an economist appearing on plaintiff's behalf. His calculations were based on an adjusted annual salary figure of $10,116.90 for 1981; a work life expectancy of 15.75 years (decedent was 45.5 years of age at the time of the accident); a 7% discount factor; a 5.9% growth rate (combined inflation/productivity factor); a 30% deduction for personal living expenses of the deceased (consumption factor); and loss of household services.
Under cross-examination, Mr. Cornwell calculated that the present value of the total economic loss would be $70,748.61 if based on a minimum wage of $3.35 per hour, or $6,968.00 per year, and a 7% discount factor, 5.9% growth rate, and 30% consumption factor. He did not include loss of household services, which this court believes to be an improper item of damages, anyway.

*960 The evidence adduced at the trial shows that the decedent's employment record had not been steady. Before working with her husband as a hot-shot driver, she apparently worked part-time at a nursing home and at other sundry jobs. The record reflects she earned approximately $4,300.00 in 1977, $2,500.00 in 1978, $760.00 in 1979, and $4,100.00 in 1980. It is true that her adjusted annual salary figure for 1981 was $10,116.90, but this court questions whether she would have continued to earn this level of income as a hot-shot driver in light of Earl Hanson's testimony that he got out of the business several months after his wife's death because business was bad, and moved to Florida.
In light of the above history of earnings by the deceased, it is the opinion of this court that Mr. Cornwell used an improper wage base of $10,116.90 in making his calculations. Furthermore, based on this history and its overall impressions at the trial, this court feels that Laura Hanson's earnings record would be similar to that prior to the accident in that she might rise to the level of full employment at minimum wage one year, and not do so the next.
Future damages are by their very nature speculative because they have not yet occurred and may not occur. Their inclusion is made necessary due to the policy of the law that all losses should be recovered in a single action so that litigation may be at an end between the parties to the affair.
Since future loss of earnings cannot be calculated with absolute, mathematical certainty, essentially a court must exercise sound judicial discretion and award an amount that, considering all of the facts and circumstances, seems just and fair to the litigants, and is not unduly oppressive to either. Unbehagen v. Bollinger Workover, Inc., 411 So.2d 507 (La. App. 1st Cir.1982); Viator v. Gilbert, 253 La. 81, 216 So.2d 821 (1968).
After analyzing the jurisprudence and the totality of the facts and circumstances of this case, it is this court's opinion that a fair and reasonable award for all parties in this litigation is the sum of $35,000.00 for loss of support from the date of death to the future.

Earl D. Hanson: Loss of Love and Affection
Earl and Laura Hanson had been married at the time of decedent's death for approximately six and one-half years, and they had no children together. Earl Hanson admitted at the trial that he and his wife had separated at least once during their marriage, and Jules Daigle, Jr. (decedent's son) testified that his mother had lived with him for approximately eight months during the separation.
This court was not impressed with the testimony of Earl Hanson with respect to the closeness and affection that existed between him and his wife. When asked by his own attorney how he felt upon learning of his wife's death, he stated he did not know. Moreover, he indicated he was nervous, but not upset when he viewed her body. Furthermore, he noted that he thinks about his late wife only every once in awhile.
Although this court does not question Earl Hanson's love for his deceased wife during their marriage, this court feels that a close and loving relationship was not established by a preponderance of the evidence at the trial. Therefore, this court deems a proper award for loss of love and affection to be the sum of $7,500.00.
Jules, Ralph, David and Albert Daigle: Loss of Support
Each of the children claim that they received periodic support from their mother, although none of them could give a definite figure as to how much, nor were any receipts introduced into evidence. At best, any support given by the decedent was in the form of loans and not gifts. These plaintiffs have failed to prove by a preponderance of the evidence any loss of support, and therefore, their claim is denied.
*961 Jules, Ralph, David and Albert Daigle: Loss of Love and Affection
The evidence reflects that Laura Hanson and her first husband, Jules Daigle, were divorced when her youngest son, Albert, was approximately six months old and her oldest son, Jules, was approximately ten years old. The senior Jules Daigle was granted custody of his four children, and their paternal grandmother raised them. All of the boys lived with their mother for various periods of time during their minority, with the exception of Albert, who testified he was planning to move in with his mother at the time she died.
The four major children all testified they loved their mother, saw her frequently, and were very upset upon learning of her death. They all indicated they missed their mother and thought about her often.
The testimony at the trial revealed to the court different degrees of closeness by the major children to their mother. However, this can be accounted for by the fact that the younger ones had not had the opportunity to establish a more mature relationship with their mother.
Although this court was not overwhelmed by the evidence as to the close and affectionate relationship between the four Daigle children and their mother, the court feels that all are proper beneficiaries to recover damages for the wrongful death of the decedent. As this court has previously noted, no monetary award can be an adequate compensation to the survivors. Nonetheless, this court finds that the sum of $15,000.00 to each of the Daigle plaintiffs will fairly and adequately compensate them for their untimely loss of their mother.
The trial court has clearly articulated its reasons for its award of damages in this case. It is the trial court's duty to weigh the credibility of the witnesses, and we as an appellate court must give great weight to its findings. We note specifically that the court was not impressed with Earl Hanson's testimony. We also note that it was not overwhelmed by the evidence given by the Daigles.
In regard to the Daigles' claim for loss of support, the trial court found that they failed to prove by a preponderance of the evidence any loss of support and denied their claim. The trial court was not clearly wrong in this finding. Our examination of the record further indicates that Hanson, the Daigles' stepfather, specifically testified on direct and cross examination that if decedent ever gave her boys any money it was behind his back, and that he was never aware of the fact that she had given them money.
We find that the trial court did not commit manifest error in refusing to award the Daigle children any sum for loss of support and awarding Hanson $35,000.00 for loss of support.
Even though we agree with plaintiffs that the awards for loss of love and affection are on the low side, the record clearly discloses the trial court's reasons for its quantum awards. We cannot say that the trial court abused its great discretion. Reck v. Stevens, 373 So.2d 498 (La.1979).
For these reasons, the decision of the trial court is affirmed. Costs, which total $5,541.75 for both of these consolidated cases, are taxed equally to Lafourche and DOTD.
AFFIRMED.
NOTES
[1] "B. Local municipal and parish authorities in their respective jurisdictions shall place and maintain such traffic control devices upon highways under their jurisdiction as they may deem necessary to indicate and to carry out the provisions of this Chapter, regulations of the department and commissioner adopted pursuant hereto, and local traffic ordinances adopted pursuant to the authority granted by R.S. 32:41 and R.S. 32:42. All such traffic control devices hereafter erected shall conform to the department's manual or specifications. If any such device hereafter erected by a political subdivision of this state fails to conform to the manual or specifications, payment of any funds allocated to that political subdivision shall be withheld by the department until the standards established by the department are complied with."