KLEES, Judge.
Plaintiff appeals the granting of a summary judgment in favor of defendant, the City of New Orleans. We affirm.
This suit arises out of an automobile collision between plaintiffs vehicle and defendant Gilmore’s vehicle which occurred on the night of October 27, 1985. At the time of the accident, it was raining very hard and there was a hurricane warning in effect for Hurricane Juan, which did hit the city that night. Plaintiff was driving down Viola Street about twenty to twenty-five miles per hour, approaching the intersection of Viola and Dwyer. Viola is a residential street; whereas Dwyer is, according to plaintiff, a main thoroughfare. The intersection is uncontrolled. Plaintiff testified in his deposition that he knew Dwyer was ahead of him and that he had slowed down to about twenty miles per hour looking for a stop sign, but he was hit before he even realized he was in the intersection. The collision between plaintiffs vehicle and defendant’s vehicle, which had been proceeding down Dwyer, occurred in the intersection, and plaintiff’s vehicle wound up on the lawn of a home on the other side of Dwyer. Plaintiff suffered a broken leg and was taken by ambulance to Methodist Hospital. He later received in the mail a traffic citation relating to the accident, but he could not recall the reason for the citation.
Plaintiff’s theory for holding the City of New Orleans liable is that the City had a duty to place a traffic control signal at the intersection, or alternatively, had a duty to warn of the uncontrolled intersection as a patently dangerous condition. The trial judge found as a matter of law that the City was not liable, and therefore granted the City’s motion for summary judgment. The plaintiff appeals, alleging that there remain disputed issues of material fact which make summary judgment improper.
Plaintiff first argues that there is a disputed issue of fact as to whether he approached what “appeared to be” an uncontrolled intersection and whether the City had a duty to warn of this fact. As plaintiff admitted in his deposition, the intersection was in fact uncontrolled. In Pepitone v. State Farm Mutual Automobile Insurance Co., 369 So.2d 267 (La.App. 4th Cir.1979), writ denied 371 So.2d 1343 (La.1979), we stated that although the defendant [parish of Jefferson] is under a legal duty not to trap a motorist on an unfavored street into believing he has the right of way, it has no legal duty to warn a motorist approaching every intersection which is or appears to be uncontrolled that he cannot enter the intersection without first ascertaining whether it is safe to do so. Id. at 270 n. 3. In Pepitone, we found that overgrown shrubs obstructing a stop sign did not create a trap which would make the parish liable. Similarly, in Peterman v. City of Hammond, 378 So.2d 181 (La.App. 1st Cir.1979), the First Circuit held that a damaged stop sign at an intersection could not have constituted a trap deluding a motorist into thinking she had an unqualified right-of-way, because, at most, the damaged sign merely resulted in its appearing to the motorist that the intersection was uncontrolled; under which circumstance she had a duty to keep a proper lookout as she entered the intersection. Thus the law does not make any distinction between an intersection which is uncontrolled and one which merely appears to be uncontrolled, but only between such an intersection and one in which the motorist is trapped or deluded into believing he has the right of way.
In the instant case, plaintiff is apparently arguing that the bad weather conditions and resulting poor visibility created a trap for any motorist approaching this intersection. We find no duty on the part of the City to warn of an uncontrolled intersection in bad weather; conversely, bad weather conditions place a higher duty of care on the motorist to slow down. Moreover, plaintiff admitted that he knew he was approaching the intersection, but he didn’t stop or slow down any more than to twenty miles per hour. Under the circumstances, we find no disputed issue of fact as to whether the City had a duty to warn of the uncontrolled intersection.
*983 Secondly, plaintiff argues that there is a factual issue as to whether the City had a duty to place a traffic control device, such as a stop sign, at the intersection. Such a duty would exist only if the lack of a stop sign created a “patently dangerous” condition, and if the City had actual or constructive knowledge of this condition prior to the accident. Daigle v. Hanson, 476 So.2d 953 (La.App. 1st Cir.1985). The only evidence on this point was the plaintiffs statement in his deposition that he remembered “people”, whom he could not identify, saying after the accident that there had been “too many wrecks in that area.” In addition, plaintiff testified that one lady (again unidentified) said she had “been trying to get them to do something” about the intersection. There were no affadavits introduced to support these assertions. Moreover, even if true, these vague statements do not give any indication that the City had actual or constructive knowledge of any problem with the intersection. The City’s position that it had no such knowledge was supported only by its assertion that it does not keep records of accidents by the locations of intersections.
Under the circumstances, we do not find that there was sufficient evidence to show a disputed issue of fact as to whether the intersection was patently dangerous or as to the City’s knowledge. Mere allegations without evidence to support them do not create a disputed issue of fact. Therefore, the trial judge was correct in granting the summary judgment in favor of the City.
Accordingly, for the reasons given, we affirm the judgment of the district court dismissing plaintiff’s suit against the City of New Orleans.
AFFIRMED.