216 So.2d 821

**Weldon VIATOR**

v.

**Thomas N. GILBERT, Coating Specialists, Inc., Westchester Fire Insurance Company and John E. Wilkinson.**

No. 49127.

Dec. 16, 1968.

Joseph A. Koury, Lafayette, for plaintiff-relator.

Ernest A. Carrere, Jr., L. Howard McCurdy, and James L. Selman, II, of Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for third-party defendant-respondent.

Schoemann, Gomes & Ducote, by Monte J. Ducote, New Orleans, for defendants-respondents.

McCALEB, Justice.

As a result of a four-car collision occurring on Highway 90 three miles east of Boutte, Louisiana on February 5, 1965, plaintiff received personal injuries while a passenger in the second car involved therein and was awarded $59,200 damages in solido against Thomas N. Gilbert, the driver of the third car, his employer, Coating Specialists, Inc., and their insurer, Westchester Fire Insurance Company. These defendants were also granted judgment for contribution against Travelers Insurance Company for its virile share, not to exceed the policy limits on a finding that its insured, Thadeus Martin, the driver of the fourth car, was guilty of negligence which was a proximate cause of the accident.

Following appeals by the defendants cast below and the third-party defendant to the Court of Appeal, Fourth Circuit, the judgment respecting liability was affirmed, but the amount thereof was reduced from $59,200 [1] to $27,270, the court holding that a $20,000 award to plaintiff for his injuries and his pain and suffering was adequate and, further, that $7,000 for his claim for future loss of earnings due to his disability was proper. In addition, the court resolved that, although plaintiff was claiming $1,007 for medical and hospital expenses, he had only submitted proof of such expenses totalling $270, and this amount was accordingly allowed. See Viator v. Gilbert, La.App., 206 So.2d 106.

Plaintiff applied to this Court for a writ of review from the judgment of the Court of Appeal. The writ was granted but

[1]. The jury's verdict was general and, therefore, the Court of Appeal was unable to ascertain the specific amounts allowed for various items of damages specially alleged in the petition.

limited to a review of awards given plaintiff for future earnings and for his special damages. See 251 La. 1056, 208 So.2d 326.

■ The main question presented for decision under the restricted grant is whether or not the allowance of $7,000 to plaintiff for loss of future earnings is inadequate. This question, of necessity, involves inquiry into the extent of plaintiff's injuries resulting from the automobile accident and whether such injuries have incapacitated him permanently from doing work of a reasonable character, that is, work for which he was fitted by training and experience of the same or similar kind in which he was engaged at the time of the accident. His present disability is shown to stem from a congenital condition of his lower back due to the presence of an extra vertebra in the lumbosacral area, and the medical testimony (Drs. Meuleman, Bush, Boustany and Salatich) is that at the present time he has a 25 to 30 percent disability of the back which is of such a nature as to incapacitate him from the substantial performance of manual labor.

■■ Thus it appears that plaintiff is entitled to recover for whatever loss of future earnings he will sustain as a result of the accident. In attempting to arrive at the correct measure of damages for this item, it is essential that we direct

attention to plaintiff's physical condition prior to the accident, his work record, the amount of his earnings and the probability or improbability that he would have been able to earn similar amounts for a number of years but for the disability brought about or aggravated by the 1965 accident. Then, too, consideration must be given to the settled jurisprudence of this Court that allowance of monetary damages for loss of future earnings (or support of dependents in case of death) cannot be calculated with mathematical exactitude; that they are speculative in character and the " * * * most that the courts can do * * * is to exercise a sound judicial discretion and award such amount as, all the circumstances considered, may seem just to both litigants and not unduly oppressive to either." Dobyns v. Yazoo & M. V. R. Co., 119 La. 72, 43 So. 934. See also Brown v. S. A. Bourg & Sons, Inc., 239 La. 473, 118 So.2d 891; McFarland v. Illinois Central Railroad Company, 241 La. 15, 127 So.2d 183, 87 A.L.R. 2d 246; and Pennington v. Justiss-Mears Oil Company, 242 La. 1, 2, 134 So.2d 53.

■ The Court of Appeal, in arriving at the sum of $7,000 for loss of future earnings, unquestionably applied the above-cited jurisprudence, holding in effect that since plaintiff's prior work record was of a sporadic nature such an award would be adequate. A review of the evidence has convinced us that the appellate court did not

err in its award for this item of damages.

Plaintiff was 34 years old at the time of the accident and had theretofore been wholly engaged in manual labor. Over a period of four months before the accident he had worked intermittently as a dump-truck driver. An investigation of plaintiff's work history shows that, after he was discharged from military service in September, 1953, he took a carpentry course in a trade school which he failed to complete. From that time to the latter part of 1959, plaintiff gave a general and rather vague description of his employment. According to his testimony, he was employed at various times as a workman in the oil fields. On one occasion, he worked for a meat packing company and was also employed by his father in some sort of work which he failed to describe in nature or duration. Actually, there is no evidence in the record of plaintiff's earnings between the years of 1953 and the latter part of 1959, at which time he was employed by Lane Wells Company and began to experience problems in his lower back. He was then referred to Dr. William Louis Meuleman, an orthopedic surgeon of Lafayette, Louisiana, whose testimony shows that he knows more about the condition of plaintiff's back than any other physician testifying in the case. Dr. Meuleman explained in detail that the presence of the extra or sixth lumbar vertebra caused plaintiff's vertebral column to slope or angulate with the result that his lower back is naturally and chronically unstable. In December, 1959 Dr. Meuleman prescribed a back brace for plaintiff to wear, and he saw him on a number of occasions during the next two years. He said that, while this brace afforded plaintiff some degree of help, a month or two later when plaintiff attempted to gradually discontinue its use and resume some of his activities, the low-back symptoms returned and required absolute bed rest for relief. During this period, Dr. Meuleman advised plaintiff that a spinal fusion should be performed in an effort to overcome the congenital defect and stabilize his low back. Plaintiff did not consent to the operation at that time.

There is no evidence produced by plaintiff that he was employed or realized any earnings between late 1959 when his low-back difficulties arose and October, 1961, a period of almost two years. Indeed, the record shows that, during the major part of this period, plaintiff was receiving weekly compensation benefits for temporary total disability from the compensation insurer of Lane Wells Company and that, on July 21, 1961, having already received $2,850, he entered into a workmen's compensation lump-sum settlement of his claim for total and permanent disability respecting his back condition and received an additional payment of $4,000 therefor.

Some two months later, plaintiff went to work for United Gas Pipeline Company as an operator of a buffer machine. But, after only a few days on the job, he experienced a recurrence of the acute low-back symptoms which caused his legs to collapse under him. He returned to Dr. Meuleman in December of 1961, and it was again recommended by the orthopedist that plaintiff undergo a spinal fusion but plaintiff was not agreeable thereto.

Aside from plaintiff's estimation that he worked for United Gas for a few days, there is no other evidence in the record disclosing the duration of this employment or the wages he received. However, he did receive compensation benefits totalling $210 for temporary total disability from the insurer of United Gas and later, on March 15, 1962, he was paid an additional $3,500 by this insurer in a lump-sum settlement of his claim for permanent and total disability benefits based on the recurrence of the low-back symptoms while working for United Gas.

From the time of his brief employment with United Gas in October, 1961 there is no record of any other employment of plaintiff until August of 1962 when he secured work as a roughneck or floorman for Chaffin Workover Company. Plaintiff testified that he worked for this company about eight or nine days and that, while lifting sacks of mud from a pallet, he experienced a sudden onset of back pain which caused him to fall ten or fifteen feet to the floor of the rig on which he was working. After this accident he was attended by a physician in the Cameron, Louisiana area and then by Dr. Thomas Bush of New Iberia who, after an initial examination, referred plaintiff again to Dr. Meuleman. The latter found that plaintiff had sustained an acute lumbosacral sprain aggravating the pre-existing congenital defect in his lumbar spine, and he again strenuously advised plaintiff to undergo a spinal fusion. Plaintiff agreed to do so on this occasion and, on September 13, 1962, the operation was performed. Plaintiff was discharged from the hospital on September 24, 1962 and a Jewitt back brace was applied to help stabilize the low back in an effort to assist the graft in taking.

Plaintiff was thereafter visited by Dr. Meuleman in October of 1962 and again on December 20, 1962. On the latter date plaintiff reported that he had been in a serious automobile accident in November, 1962, wherein he suffered abdominal injuries requiring hospitalization and surgery for the removal of his spleen. He further reported to Dr. Meuleman that his back brace had been so severely bent and damaged in the accident he had been unable to wear it thereafter. At the instance of Dr. Meuleman X-rays were taken, which showed a radiolucent line around the lower portion of the graft. Dr. Meuleman be-

lieved this indicated that the bone graft was not healing and there was the possibility of failure or nonunion of the graft. Therefore, he immediately fitted plaintiff with another brace in an effort to immobilize the lower back and saw plaintiff on a regular basis over the next several months. Additional X-rays were taken in February, 1963 which again showed motion of the graft at the fusion site and, at this time, Dr. Meuleman concluded that pseudoarthrosis or failure of the fusion was taking place. Subsequent X-rays suggested lack of motion of the graft, and Dr. Meuleman then became hopeful that the fusion may have been salvaged after all with the second period of bracing. However, clinical examinations in May and June of 1963 revealed that plaintiff was complaining of the same low-back symptoms he had experienced prior to the operation. These complaints according to Dr. Meuleman, are totally inconsistent with the healing or success of the bone-graft fusion.

Final examination of plaintiff by Dr. Meuleman, before the occurrence of the accident involved in this case, was on January 20, 1964. At that time, plaintiff reiterated his prior complaints that, whenever he attempted any type of activity, he experienced sharp low-back pains which required complete bed rest for relief. On this occasion Dr. Meuleman took more X-rays, and he testified that, while the

more recent films tended to indicate immobilization of the fusion, he nevertheless felt that it had not been successful initially because the films taken in the first few months following the auto accident of 1962 had definitely shown breaking and movement of the graft and, further, because plaintiff, since the 1962 accident, had continuously complained of recurrent low-back episodes of pain. For these reasons, Dr. Meuleman recommended in January, 1964 that plaintiff consider surgical re-exploration and refusion. But plaintiff advised Dr. Meuleman that his attorney would have to be the one to make the decision. The recommended operation was never performed.

After the accident of August, 1962, while plaintiff was working with Chaffin Workover, plaintiff made his third claim in as many years for total permanent disability under the Louisiana Workmen's Compensation Act against the insurer of his employer. In this instance, he had been paid temporary total disability from October 9, 1962 to August, 1963, and was paid in addition the sum of $7,000 by his employer's insurer on February 25, 1964 in settlement of this claim.

Except for the three or four days of employment clearing trees on a right-of-way in the spring of 1964, the record shows that plaintiff was without employment between the date of his accident, while working for Chaffin Workover in

August of 1962, and September 18, 1964 when he found employment as a truck driver for Southern Painting and Construction Corporation, a subsidiary of W. R. Aldrich and Company. Accordingly, for a period of approximately five years, 1959 to 1964, the only previous employment established by plaintiff was a few days in October, 1961 for United Gas, some eight or nine days for Chaffin Workover Company in August, 1962, and three or four days for an unknown employer clearing a right-of-way in the spring of 1964.

In his effort to establish loss of future earnings resulting from the February 5, 1965 accident, plaintiff's counsel lays great stress on the two previous periods of employment as a truck driver for Aldrich and Company, shortly before the occurrence of the accident, extending from September 18 through December 27, 1964, and from January 10 through January 24, 1965, for which he was compensated $967.60 for the first period and $99 for the second period. He contends that this is the work record on which the award should be calculated.

However, we do not believe that this three or four month employment controls. On the contrary, the whole work record should be scrutinized, as it is the totality of the circumstances which must be the ultimate criterion in the assessment of the damages for loss of future earnings. While we sympathize with plaintiff because of his unfortunate physical condi-

tion, we think it clear from the evidence that he has failed to establish with any degree of certainty a record of prior regular employment and earnings, from which it can be deduced that he was able, before the accident in this case, to earn wages as a manual laborer consistently for any substantial work period. We have no doubt that he is, and has been for a long time, incapable of satisfactorily performing manual labor except, as found by the Court of Appeal, for sporadic periods of short duration. And, while the evidence warrants the conclusion that the accident in the instant case has aggravated to some extent the congenital back trouble from which plaintiff has suffered for a number of years and which prevented him from engaging in steady employment, it would be the rankest sort of speculation for us to conclude that he has sustained a greater loss of future earnings than that assessed by the Court of Appeal. For, albeit awards of this sort are necessarily speculative in character, the courts in exercising a sound discretion must be mindful to be " * * * just to both litigants and not unduly oppressive to either." Dobyns v. Yazoo & M. V. R. Co., supra, and other authorities above cited. Here we find no preponderance of proof that, but for the accident involved herein, there is a reasonable likelihood that plaintiff could work regularly for any length of time as a manual laborer.

 On the other hand, insofar as plaintiff's claim for special damages is concerned, we find that the Court of Appeal erred in awarding recovery of $270 medical expenses on the basis that he had submitted only two bills, one hospital bill for $35 and another $235 bill for diathermy treatments. Plaintiff sued for recovery of several items of medical expenses totalling $1007, which were proven by competent testimony in the trial court. In fact, counsel for respondents admitted during oral argument in this Court that the medical expenses claimed by plaintiff had been established at the trial.

For the reasons assigned, the judgment of the Court of Appeal is amended by increasing the amount thereof to $28,007 and as thus amended, it is affirmed. The costs in this Court are to be paid by respondents.