391 So.2d 501 (1980)
Michael CHANEY, Plaintiff-Appellee,
v.
OUR LADY OF FATIMA CATHOLIC CHURCH et al., Defendants-Appellants.
No. 7846.
Court of Appeal of Louisiana, Third Circuit.
November 12, 1980.
*502 Voorhies & Labbe, E. Gregory Voorhies, Lafayette, for defendants-appellants.
Robert E. Keaty, New Orleans, for plaintiff-appellee.
Before FORET, DOUCET and LABORDE, JJ.
FORET, Judge.
This is an action ex delicto. The corporation of Our Lady of Fatima Catholic Church (Fatima) and its primary automobile liability insurer, Reliance Insurance Company (Reliance), are made defendants. The plaintiff, Michael Chaney, is seeking to recover damages for personal injuries received in a collision between a motorcycle driven by him and a pickup truck owned by the defendant Fatima, which was being driven by one of its employees, Darren Sharlow, who was not made a defendant to this suit. The action was tried before a jury which returned the following verdict in favor of the plaintiff:

The trial court rendered judgment pursuant to this verdict and awarded plaintiff the sums assessed by the jury. The defendants bring this appeal.
The appellants assign three specifications of error in the brief which they submitted to this Court. Our decision with regard to specification of error number two pretermits any need for a discussion of the others.

ISSUE
The only crucial issue raised by appellants is whether the plaintiff met his burden of proof in relation to his claim for damages resulting from a loss of future earnings. There is no dispute as to the awards for medical expenses and loss of past earnings.
The accident occurred on the morning of May 9, 1978. The plaintiff had just left the apartment complex where he resided and was traveling down the Guilbeau Road in Lafayette, Louisiana. Sharlow was proceeding on the same road in the opposite direction. Sharlow was attempting to make a left turn and had crossed the center line of the road when he saw plaintiff coming at him. Sharlow then stopped or was almost stopped in plaintiff's lane of traffic *503 when plaintiff saw him. Plaintiff tried to avoid the collision by laying down the motorcycle in an effort to get off of it. He was unsuccessful in doing so and slid under the front end of the truck, sustaining bodily injury in the ensuing collision.
The plaintiff was taken by ambulance to a Lafayette hospital where he was treated and released. Plaintiff later visited local physicians complaining of continuing pain in his lower back and right leg.
There were two medical experts who testified by deposition. Dr. Kenneth Vogel, a neuro-surgeon practicing in the city of New Orleans, first examined the plaintiff on August 31, 1978. His preliminary diagnosis was that plaintiff was suffering from either a low back strain or a herniated disc. He also found evidence of hypoalgesia or numbness in the right foot and a teardrop fracture of one of the vertebra. Dr. Vogel confirmed his diagnosis of a herniated disc after running a series of tests on the plaintiff. The doctor eventually performed a posteromedial rhizotomy in an attempt to relieve the chronic pain from which plaintiff was suffering.
Dr. Stephen Goldware, also a neuro-surgeon, practicing in Lafayette, Louisiana, testified as to his treatment of plaintiff. He first examined plaintiff on January 19, 1979. His diagnosis was that plaintiff had a lumbar root compression, probably due to a herniated disc or root contusion. He also found evidence of numbness in plaintiff's right foot.
Plaintiff filed suit against Fatima and Reliance on February 21, 1979. He alleged that the negligence of Sharlow was the sole cause of the accident.
Appellants concede their liability on appeal and contest only the award of $100,000.00 to the plaintiff for loss of future earnings. Appellants argue that plaintiff failed to present any evidence at trial which tended to show his right to recover for those damages.

LOSS OF FUTURE EARNINGS
A plaintiff who seeks to recover for loss of future earnings has the burden of proving the extent of his injuries resulting from the accident. He must also prove whether such injuries have incapacitated him from, in the future, doing work of a reasonable character, that is, work for which he was fitted by training and experience, of the same or similar kind in which he was engaged at the time of the accident. Viator v. Gilbert, 253 La. 81, 216 So.2d 821 (1968).
Dr. Vogel testified on behalf of plaintiff. That testimony as to his long-term prognosis with regard to plaintiff's recovery was as follows:
"A. ... It was felt at that time maybe he would have incurred an approximate ten (10) to fifteen (15) percent medical impairment of the body as a whole, or disability, for a period of one (1) year. And during that time of one (1) year, he should avoid activities which would require him to lift things over fifty (50) pounds or bend repeatedly. After the one (1) year, it is anticipated that at this time that these lifting restrictions would be lifted if his healing goes on as optimistically anticipated."
Dr. Vogel further testified on cross-examination that:
"Q. And it's your opinion today, doctor, that this herniation will, in fact, heal itself?
A. Yes.
Q. So is it safe to say then, doctor, one (1) year from now Mr. Chaney should be almost as good as new?
A. Correct.
Q. You have mentioned the possibility of arthritis in the area of the little teardrop chip that you talked with us about. How much of a problem would that be, doctor?
A. I don't think it is going to be a problem at all."
The only other evidence presented by the plaintiff, regarding this element of damages, consisted of his testimony as to his own fears and apprehensions that he would *504 be permanently disabled. We find that this falls far short of proving, by a preponderance of the evidence, that plaintiff would suffer a permanent decrease in earning capacity. His own medical expert testified that he anticipated full recovery within a time period of one year.
Our finding is also supported by other evidence in the record which indicates that plaintiff has not suffered any decrease in his earning capacity. Plaintiff is employed by the Baker Sand Control Company in Lafayette. The appellants called William Owens, an officer of Baker Sand, as their own witness. He testified that plaintiff was earning approximately $700.00 per month more at the time of the trial than at the time of the accident.
The defendants called Dr. Stephen Goldware as a witness. He testified that his examination of the plaintiff and the tests he performed showed no indication of any permanent injury.
The plaintiff must prove his loss with reasonable certainty to support an award for loss of future earnings. Speculation, probabilities and conjecture cannot form the basis for such an award. Watson v. Hartford Accident & Indemnity Company, 339 So.2d 480 (La.App.2 Cir. 1976), writ denied, 341 So.2d 1124 (La.1977); Burrows v. Louisiana Department of Highways, 319 So.2d 867 (La.App.3 Cir. 1975); Heard v. Sanders, 223 So.2d 212 (La.App.2 Cir. 1969).
Plaintiff has failed to prove any permanent decrease in his earning capacity in our opinion. Consequently, we will amend the judgment of the trial court to delete the award of $100,000.00 to the plaintiff for loss of future earnings.

INADEQUACY OF JURY AWARD FOR GENERAL DAMAGES
The jury awarded the amount of $8,000.00 for "mental and physical pain and suffering, past and future."
It is obvious, from a review of the evidence, which will be articulated hereinbelow, that the jury committed manifest error, in that the award is grossly inadequate.
When a jury award is itemized as to each element of damage claimed, the appellate court separately reviews the evidence as to each element and may correct an error as to any, without regard to the correctness or error as to any other element of damage. Roy v. Schneider, 367 So.2d 1314 (La.App.4 Cir. 1979); Blancher v. Samuels, 354 So.2d 213 (La.App.4 Cir. 1977), cert. denied, 355 So.2d 257, 263 (La.1978).
LSA-C.C.P. Article 2164[1] provides that this Court shall render any judgment which is just, legal and proper upon the record on appeal. We feel that justice requires us to increase the jury's award to the plaintiff for mental and physical pain and suffering, past and future. See also Official Comment to LSA-C.C.P. Article 2164; Temple v. Liberty Mutual Insurance Company, 330 So.2d 891 (La.1976); Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975).
This Court is well aware of the principle of LSA-C.C. Article 1934(3)[2] that in the assessment of damages in cases of offenses and quasi offenses, "much discretion" must be left to the judge or jury.
Whenever the issue of quantum is considered on appeal, the court must make an initial inquiry as to whether the trial court's award for the particular injury, and its effect on this particular injured person, *505 is a clear abuse of the trier of fact's "much discretion," LSA-C.C. Article 1934(3), in the award of damages. It is only after articulated analysis of the facts discloses an abuse of discretion, that the award may, on appellate review, be considered either excessive or insufficient. Reck v. Stevens, 373 So.2d 498 (La.1979); Carollo v. Wilson, 353 So.2d 249 (La.1977); Schexnayder v. Carpenter, 346 So.2d 196 (La.1977); Olds v. Ashley, 250 La. 935, 200 So.2d 1 (1967).

ARTICULATION OF REASONS FOR QUANTUM INCREASE
Plaintiff had moved to Lafayette approximately three months before the occurrence of the accident, and secured a job with Baker Sand Control. He participated in a training program with that company, which was to last for three months, but which plaintiff could not finish because of the collision and resulting injury.
The plaintiff was pinned under the front end of the truck and seriously injured in the accident. The driver of the truck testified that as he got out of his vehicle, he took his foot off the clutch while the motor was running. This caused the vehicle to jerk, which further aggravated plaintiff's injuries. Plaintiff had to take off two months from work in order to recover. He was able to walk only with the aid of crutches. He was treated by a Lafayette physician in this recovery phase and also underwent physical therapy. Plaintiff testified that he returned to work when he was able to walk unaided.
Plaintiff's back was still hurting him when he returned to work, and his attorney referred him to a physician in New Orleans, one Dr. Deiser. Plaintiff saw Dr. Deiser in August of 1978. His attorney then sent him to Dr. Kenneth Vogel for consultation. Dr. Vogel felt that plaintiff would gradually improve with conservative care, which included moist heat, massage, physical therapy, and medication that does not include surgery.
Plaintiff then complained to appellant that he was still in pain and that he had no money to see a doctor. It was then that appellant sent him to see Dr. Goldware in Lafayette. Dr. Goldware examined plaintiff and recommended that he enter a hospital for myelography. Dr. Goldware felt that the positive objective signs which he found in his examination justified such a procedure. The plaintiff agreed and entered a Lafayette hospital on March 16, 1979, where he remained until his discharge on March 21, 1979.
The plaintiff saw Dr. Goldware for the last time on April 20, 1979. He continued to complain of pain in his back. Dr. Goldware recommended some psychological tests to see if that would provide any explanation for the pain. He felt that exploratory surgery was not indicated, and he was at an impasse as to what was causing the pain. Dr. Goldware testified that he ran tests to objectively determine if plaintiff was malingering or if the pain was some sort of hysterical reaction. He testified that he found no evidence of either.
Plaintiff returned to Dr. Vogel on May 1, 1979, still complaining of low back pain with intermittent pain in his right leg. Dr. Vogel suggested that he enter a hospital for a complete evaluation. Plaintiff agreed and was admitted to a New Orleans hospital on May 13, 1979. Dr. Vogel ordered a lumbar discogram run on plaintiff. The myelogram and lumbar discogram are moderately painful tests in and of themselves.
Dr. Vogel concluded from his tests that a disc in plaintiff's spine had herniated. When asked if this type of injury can be painful, Dr. Vogel replied that:
"A. It can be. If one simply realizes that the disc has had a tear in it and it goes up into the bone, it can cause pain during the time of the herniation. It is not the kind of problem that we have to operate on to remove because it is not pinching the nerve, but by the fact that it is torn into the vertebral body or into the bone, this can cause pain."
Dr. Vogel also found that there was a slight chipping of one of the vertebra. Dr. Vogel testified that this could indicate some *506 type of blow being administered to the spine. He was asked if this type of injury in and of itself is painful or could be painful. He testified that it could be painful if it was traumatic in origin, and that he found the fracture in the same general area of the lumbosacral spine where the herniated disc was located.
Dr. Vogel then recommended a lumbar rhizotomy in an attempt to relieve the plaintiff's back pain. This procedure involves the insertion of an electrode into an area around the spine, the object being to sever certain nerves found there. Plaintiff was advised that such a procedure could result in paralysis of his leg with a permanent loss of the ability to walk. Plaintiff agreed to the operation.
The procedure was somewhat successful, and plaintiff was discharged on May 21, 1979, some eight days after he had been admitted. The plaintiff last saw Dr. Vogel on August 2, 1979, about four-and-a-half months before the trial. Plaintiff was unable to work between May 13, 1979, and the time of his last visit to Dr. Vogel. The doctor could not release him for an additional three weeks, and plaintiff did not return to work until August 28, 1979.
We find that the record clearly shows that plaintiff suffered chronic moderate back pain for almost a year between the time of the accident and the time that the rhizotomy was performed. It was Dr. Vogel's assessment, after the last visit, that plaintiff was still suffering from mild back pain.
We are of the opinion that the trier of fact abused its discretion in awarding plaintiff only $8,000.00 for mental and physical pain and suffering, past and future. Reck v. Stephens, supra; Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977).
We agree with our Supreme Court in the cases just cited that a resort to the jurisprudence in an attempt to discern what amount would fully indemnify the plaintiff for this element of his damages would be of little or no value. We find that the lowest amount reasonably within the discretion of the trial court that would provide the full compensation to which plaintiff is entitled is $25,000.00.
For the above and foregoing reasons, the judgment of the trial court is amended and affirmed, deleting the $100,000.00 award for loss of future earnings, and raising the amount awarded to plaintiff for mental and physical pain and suffering, past and future, to $25,000.00 for a total award as follows:

General damages --------------- $ 25,000.00
Loss of past earnings --------- 12,000.00
Medical expenses -------------- 5,000.00
 ____________
TOTAL AWARD ------------------- $ 42,000.00

Costs of appeal are assessed one-half to plaintiff and one-half to defendants-appellants.
AMENDED AND AFFIRMED.
NOTES
[1] "Art. 2164. Scope of appeal and action to be taken; costs

The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages for frivolous appeal; and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable."
[2] LSA-C.C. Article 1934(3) reads in pertinent part:

"In the assessment of damages under this rule, as well as in cases of offenses, quasi offenses, and quasi contracts much discretion must be left to the judge or jury, while in other cases they have none, but are bound to give such damages under the above rules as will fully indemnify the creditor, whenever the contract has been broken by the fault, negligence, fraud or bad faith of the debtor."