Judge Paula A. Brown
11 This is a tort suit. The defendants, Larry Spencer, III, Sysco Food Services Of New Orleans (“Sysco”) and Zurich, American Insurance Company, (collectively, the “Defendants”),- appeal the trial court’s finding of liability and award of damages in favor of the plaintiffs, Joseph W. Urquhart and James M. Nye (collectively, the “Plaintiffs”). Plaintiffs appeal the trial court’s damage awards, arguing the awards are abusively low. For the reasons that follow, we affirm.
FACTUAL AND PROCEDURAL BACKGROUND
Mr. Urquhart and Mr. Nye were involved in a motor vehicle accident with Mr. Spencer on May 9, 2012. Mr. Nye was the driver of the vehicle and Mr. Urquhart was his passenger. At the time of the accident, Mr. Spencer was within the course and scope of his employment with Sysco.
A judge trial in this matter was held on January 12, 13, and 14, 2015.[1] At trial, Mr. Nye testified he was traveling westbound on E. Judge Perez Drive in Chalmette, Louisiana in the right lane of travel. At the same time, Mr. Spencer made a U-turn from the eastbound side of E. Judge Perez Drive, crossed into the |2right travel lane of the westbound side of West Judge Perez Drive traffic, and collided with Plaintiffs’ vehicle. Mr. Spencer was driving a tractor trailer.
Larry Straub, an acquaintance of Mr. Urquhart, witnessed the aceident. He testified that his vehicle and Plaintiffs’ vehicle *1026 were in the right-hand lane of travel- on E. Judge Perez Drive. Mr. Straub said he saw the vehicle driven by Mr. Spencer leave the left lane of travel, enter the right lane, and strike Plaintiffs’ vehicle.
Mr,' Spencer, on the other hand, testified he was- travelling eastbóund on E, Judge Perez-Drive and was making a-U-turn to' head westbound on E. Judge Perez Drive. When he initiated his U-turn, he saw Plaintiffs’ vehicle across the road in a parking lot. He testified that he waited in the median area to complete the U-turn; however, -as he swung into the roadway to complete his turn, Plaintiffs’ vehicle ran into the rear of his vehicle.
Both parties offered testimony from accident reconstruction experts. Plaintiffs’ expert, Raymond Burkhart, placed fault for the accident on Mr. Spencer, Mr. Burk-hart examined the accident scene, photographs of damage to each vehicle, and witness testimony, including the deposition of Mr, Spencer. He testified the physical damage to Mr. Nye’s vehicle was totally inconsistent with Mr. Spencer’s version of the accident. Mr. Burkhart opined that the accident was caused as a result of Mr. Spencer’s failure to check his right side view mirror before entering the right lane of travel, and Mr. Spencer’s failure to yield.
Contrarily, Defendants’ expert, Joseph Blaschke, concluded Mr.. Nye was at fault for the accident. In.reaching his conclusion, Mr. Blaschke relayed that he inspected Defendants’ vehicle, the accident site, reviewed photographs of Mr. Nye’s vehicle, and the deposition testimony of Mr. Urquhart, Mr. Spencer, the investigating police officer, Mr. Straub, and Mr. Burk-hart. Mr. Blaschke testified Uthat Mr. Spencer’s testimony was more consistent with how the accident occurred. Mr, Blaschke opined that Mr. Spencer entered the roadway first, and as Mr, Spencer moved into the right lane to complete his turn, Mr. Nye struck his vehicle, thereby causing the accident,
The medical records, bills and deposition testimony.of Mr, Urquhart were admitted into- evidence.[2] The medical records showed Mr. Urquhart claimed injuries to his neck, back, knee, left elbow and left hip; had complaints of radiating pain; and required use of a walking cane for ambulation. Mr. Urquhart obtained conservative medical treatment for nearly a year and a half.
At trial, Logan Urquhart and Damien Urquhart, Mr. Urquhart’s' sons, testified on behalf of their father. Both admitted Mr. Urquhart’was disabled at the time of the-accident; however, they said he was active before the accident and became a “couch potato” after the accident. Each further testified that their father suffered on-going effects from the accident until his death.[3] Mr. Urquhart’s medical expenses totaled $10,605.00.
Mr. Urquhart’s medical records, along with his deposition testimony, also showed he had more than a dozen heart attacks, three accidents, and complained of chronic back, neck, and hip pain before the May 2012 accident. He regularly visited' a pain management* clinic where he received pain medication in the months leading up to the May 2012 accident.'A medical report dated April 11, 2012, revealed Mr. Urquhart associated his pain with a 1980 work accident and described his pain as “disabling” and “unbearable.” -
*1027 14As to Mr. Nye, he testified he injured his neck and back in the May 2012 accident. He underwent multi-level back surgery in October 2012 and was later diagnosed with reflex sympathetic dystrophy (“RSD”).[4] Mr. Nye acknowledged he had undergone two previous back surgeries in connection with a 2005 motor vehicular accident; however, he stated that he had mostly recovered and was relatively healthy and active until the present accident. He said he played basketball, golf, and had started working as a personal trainer in 2010. He testified that he had twenty-six' clients who paid him roughly $35.00 per session, Mr. Nye' further testified that his injuries from the May 2012 accident not only prevented him from working as a personal trainer, but also derailed his intent to return to work at Domino Sugar Refinery, his previous, employer.
' Mr. Nye’s sons, Tyler Nye and Hunter Nye, testified that Mr. Nye was active before the accident, had worked as personal trainer, and wanted to return to work. Likewise, Trent Diaz, a friend and former Domino co-worker, testified that Mr. Nye wanted to return to work at Domino.
Dr. Kenneth Vogel, Mr. Nye’s neurosurgeon, who also performed Mr. Nye’s back surgery in 2008, related Mr. Nye’s October 2012 multi-level back surgery to the May 2012 accident. He also testified that Mr. Nye’s RSD diagnosis was caused as.-a result of the May 2012 accident. Dr, Vogel recommended palliative medical treatment[5] to deal with Mr. Nye’s on-going physical pain complaints.
Mr. Nye’s vocational rehabilitation expert, Bobby Robert's, testified that Mr. Nye could not return to work. He further testified that Mr. Nye might possibly | ^require a cervical antérior fusion. Mr. Roberts consulted with "Dr. Jonathan Thompson—a neuroscience pain specialist who had evaluated Mr. Nye—to develop a future medical needs costs treatment plan. The plan included Dr. Thompson’s recommendation that Mr. Nye’s future medical treatment consist of implantation of a spinal stimulator, psychological counseling, pain medication, physical therapy, MRIs, and attendant care.[6] Mr. Roberts said the costs for these procedures amounted to $1,816,113.00. The parties stipulated to past medical expenses of $167,563.85.
Dr. Shael Wolfson, Mr. Nye’s expert economist, testified that Mr. Nye’s injuries, and his inability to return to work as a result of his injuries, resulted in lost wages and loss of wage earning capacity, totaling $841,728.00.
In addition to the May 2012 accident, the evidence revealed Mr. Nye’s medical history included four previous accidents— December 2005, June 2009, November 2010, and February 2012—and a subsequent motor vehicle accident on August 22, 2013. His medical records showed that he underwent a micro-discectomy in 2006 and a multi-level cage fusion in 2008.
. Mr. Nye treated with Dr. William Bath-erson, a chiropractor, for neck and back injuries resulting from the 2005, 2009, and the February and May 2012 accidents. Dr. Batherson testified that Mr. Nye’s May 20Í2 accident caused the most neurological *1028 damage to his lumbar spine. However, Dr. Batherson conceded that he referred Mr. Nye for a neurological consult for possible surgical intervention in 2010 and 2011, and that Mr. Nye did not tell him about his-subsequent August 2013 accident. His records also indicated that Mr. Nye’s low | (¡back pain and radicular symptoms had worsened after the February 2012 accident and that Mr. Nye had reported on-going low back, left leg, and left foot pain as recently as two days before the May 2012 accident.
The medical records of Dr. Steve Morris, III, a Mississippi pain specialist, were introduced into evidence. They showed Mr. Nye started monthly treatments with Dr. Morris in January 2009. Each month, Dr. Morris prescribed pain and anxiety prescriptions, such as Roxicodone, Soma 350, Xanax, and Ambien. On a scale of one to ten, Mr. Nye consistently described his pain level—both before and after the May 2012 accident—as a “four” with medication and a “ten” without medication.
On cross-examination, Dr. Vogel admitted that Mr. Nye had given him an incomplete medical history. He testified he was unaware that Mr. Nye had worked as a trainer and did not know about the amount of pain medication or level of pain complaints noted in Dr. Morris’ records. Dr. Vogel conceded he relied on Mr. Nye to give an accurate medical history in order for him to establish the causal connection between Mr. Nye’s May 2012 accident and his injury complaints. Nevertheless, based upon his treatment of Mr. Nye, Dr. Vogel testified that it was more probable than not that Mr. Nye’s 2012 back surgery and RSD diagnosis were related to the May 2012 accident.
Defendants’ vocational rehabilitation expert, Barney Hegwood, testified that he reviewed twenty-one different documents in reaching his assessment of Mr. Nye. They included: Dr. Batherson’s reports; the vocational evaluation report of Bobby Roberts; the medical reports of Dr. Thompson; the medical records of Dr. Vo-gel; the medical records of Dr. Steve Morris; the deposition and interrogatory l7responses of Mr. Nye; miscellaneous diagnostics, dated January 16, 2006 through October 30, 2012; medical records of various medical providers from 2005-2008; and a job description for machine attendant at Domino Sugar Refinery. Mr. Heg-wood also said he interviewed Mr. Nye. Based upon his interview and the documents he reviewed, Mr. Hegwood concluded that Mr. Nye was totally disabled before the May 2012 accident.
Defendants’ neurological surgeon expert, Dr. Najeeb Thomas, testified that he examined Mr. Nye on May 20, 2014. In addition, he relayed that he reviewed several documents, including medical records from Mr. Nye’s 2006 and 2008 back surgeries, Dr. Vogel’s medical records, and Dr. Morris’ medical records in reaching his medical expert opinion. Upon considering Mr. Nye’s physical examination, history of low back problems and previous surgeries, along with his prior medical records, Dr. Thomas opined that Mr. Nye had no new findings he could relate to the May 2012 accident.
Upon submission of the case, the trial court found Mr. Spencer 100% at fault for the accident. In its damages assessment, the trial court attributed 80% of Mr. Urquhart’s damages to the May 2012 accident. It awarded Mr. Urquhart’s estate $38,000.00 in damages. The amount included $30,000.00 in general damages and $8,000.00 in special damages.
As to Mr. Nye, the trial court found him totally disabled from work at the time of the accident and, therefore, disallowed all wage loss claims. It attributed 50% of his alleged non-RSD medical complaints and 100% of his RSD damages to the May 2012 *1029 accident. It awarded Mr. Nye $479,362.45 in damages, itemized as follows:
_k
$ 10,000.00 Past general damages
$ 10,000.00 Past RSD-related general damages
$ 50,000.00 Future general damages
$ 30,000.00 Future RSD-related general damages
$167,563.85 Past special medical damages
$211.798.60 Future Special medical damages
$479,362.45
The trial court denied Mr. Nye’s motion for new trial. These consolidated appeals followed.[7]
DISCUSSION
Defendants contend that the trial court erred in finding Mr. Spencer 100% at fault and awarding the plaintiffs any damages. Plaintiffs contend the damages awards were abusively low. We divide our analysis into two parts: (I) allocation of fault and (II) damages.
I. ALLOCATION OF FAULT
This Court discussed the standard of review that governs appellate review of a trial court’s findings on the issue of liability and allocation of fault in Watson v. Hicks, as follows.
It is well-settled in our jurisprudence that a reviewing court may not disturb the factual findings of the trier of fact in the absence of manifest error. Ardoin v. Firestone Polymers, L.L.C., 10-0245 at p. 6 (La.1/19/11), 56 So.3d 215, 219. The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfin-der’s conclusion was a reasonable one. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). If the factual findings are reasonable in light of the record reviewed in its entirety, a reviewing court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Id. at 882-883. However, where ^documents or objective evidence so contradict the witness’ story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness’ story, the court of appeal may find manifest error or clear wrongness, even in a finding purportedly based upon a credibility determination. Id. at 882; Rosell v. ESCO, 549 So.2d 840 (La. 1989).
The manifest error standard also governs this court’s review of the trial court’s findings regarding the allocation of fault. Beggs v. Harrah’s New Orleans Casino, 14-0725, pp. 13-14 (La.App. 4 Cir. 1/21/15), 158 So.3d 917, 925. The jurisprudence is well-settled that appellate courts are required to give great deference to the trial court’s allocation of fault and that “[o]nly after making a *1030 determination that the trier of fact’s apportionment of fault is clearly wrong can an appellate court disturb the award.” Fontenot v. Patterson Ins., 09-0669, p. 22 (La. 10/20/09), 23 So.3d 259, 274 (citing Clement v. Frey, 95-1119, 95-1163, p. 7 (La. 1/16/96), 666 So.2d 607, 610-11). The Supreme Court has analogized an appellate court’s allocation of fault after a finding of manifest error to an appellate review of quantum assessments. Clement, supra.
In Duncan v. Kansas City Southern Railway Co., 00-0066, pp. 10-11 (La. 10/30/00), 773 So.2d 670, 680-81, the Supreme Court summarized the standard of review applicable to allocation of fault determinations as follows:
This Court has previously addressed the allocation of fault and the standard of review to be applied by appellate courts reviewing such determinations. Finding the same considerations applicable to the fault allocation process as are applied in quantum assessments, we concluded “the trier of. fact is owed some deference in allocating fault” since the finding of percentages of fault is also a factual determination. Clement v. Frey, 95-1119 (La. 1/16/96), 666 So.2d 607, 609, 610. As with other factual determinations, the trier of fact is vested with much discretion in its allocation of fault. Id. Therefore, an appellate court should only disturb the trier of fact’s allocation of fault when it is clearly wrong or manifestly erroneous, Only after making a determination that the trier of fact’s | ^apportionment of fault is clearly wrong can an appellate court disturb the award,' and then only to the extent of lowering it or raising it to the highest or lowest point respectively which is reasonably within the trial court’s discretion. Clement, 666 So.2d at 611; Coco v. Winston Industries, Inc., 341 So.2d 332, 335 (La.1977).
2015-0046, pp. 7-8 (La. App. 4 Cir. 5/27/15), 172 So.3d 655, 663-64.
Defendants contend the trial court erred in its allocation of fault because the physical evidence supports their driver’s version of the accident facts. They argue that Plaintiffs’, version of the accident is inconsistent with the physical evidence. In particular, Defendants note that Plaintiffs and Mr. Straub testified that the impact between Plaintiffs’ vehicle and the Sysco truck was in the middle of the trailer; whereas, both experts testified the collision occurred at the rear of the trailer. Plaintiffs'counter that their expert, Raymond Burkhart, concluded Defendants’ driver caused the accident when he made an improper lane change. Plaintiffs emphasize that, notwithstanding any alleged discrepancies regarding the location of the initial impact, they and their witness consistently testified the accident happened when Defendants’ tractor ’trailer moved from' the left lane to the right lane of travel, striking Plaintiffs’ vehicle.
As referenced in Watson v. Hicks, supra, our. jurisprudence has long established that an appellate court may not set aside a trial court’s or a jury’s finding of fact in the absence of manifest error or unless it is clearly wrong. Moreover, where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable fact inferences should not be disturbed on review, even, though the appellate court may feel its own evaluations and inferences are as reasonable. Rosell, 549 So.2d at 844.
In Here, the trial court accepted the testimony of Plaintiffs, their eyewitness, and their accident reconstruction expert. Based on that evidence, the trial court concluded that Mr. Spencer was the sole cause of the accident. We cannot conclude the trial court was manifestly erroneous in allocating 100% of the fault to Defendants. Ac *1031 cordingly, this assignment of error lacks merit.
We now turn to whether the trial court erred in its damages awards.-
II. DAMAGES

A. Defendants’ Contest of Causation and Award of Damages, to Plaintiffs

Defendants claim the damages award to Plaintiffs should be set aside because Plaintiffs did not prove their injuries resulted from the May 2012 accident. They argue Plaintiffs were already disabled from neck and back injuries and were receiving medical treatment in connection with those injuries. As to Mr. Urquhart, they argue that he treated for the same injuries before and after the accident, with essentially the same pain levels. Defendants maintain that Mr. Urquhart’s low quality of life complaints were related to his preexisting heart condition, not this accident. Similarly, as to Mr. Nye, they point to his two prior back surgeries and medical records, which showed his pain complaints were the same after the accident as before the accident.
The test for determining the causal relationship between the accident and a subsequent injury is whether the plaintiff provided sufficient proof that more probably than not, the accident caused the subsequent injuries. Frost v. Carter, 2013-0375, pp. 7-8 (La. App. 4 Cir. 4/2/14), 140 So.3d 59, 64. The record supports Defendants’ position 'that Plaintiffs suffered from pre-existing disabilities that required active medical treatment at the time of the May 2012 accident. Louisiana jurisprudence, however, is well-settled that a defendant “takes his victim 112as he finds him” and is responsible for all natural and probable consequences of his negligent conduct. Lasha v. Olin Corp., 625 So.2d 1002, 1005 (La. 1993). Thus, when a defendant’s tortious conduct aggravates a preexisting condition, the defendant must compensate the victim to the full extent of the aggravation. Id. at 1006. This principle also requires the plaintiff to establish a causal link between the tortious conduct and the aggravation of his preexisting medical condition. Logan v. Brink’s, Inc., 2009-0001, p. 10 (La. App. 4 Cir. 7/1/09), 16 So.3d 530, 539.
The record does not support Defendants’ contention that Plaintiffs failed to prove any causal connection between their alleged injuries and the May 2012 accident. As to Mr. Urquhart, medical reports were introduced from Ochsner Medical Center, Dr. Batherson, and Dr. Robert C. McMyne, Jr., that attributed his low back pain complaints to the May 2012 accident. In the case of Mr. Nye, Dr. Vogel testified that Mr. Nye’s 2012 multi-level back surgery and his RSD diagnosis resulted from the May 2012 accident. Dr. Batherson also testified that he noticed some new symptoms in Mr. Nye’s left lower extremity and that Mr. Nye felt worse after the May 2012 accident. Along with the testimony of their respective treating physicians, Plaintiffs also offered supporting testimony from family members and friends to establish they sustained injuries from the May 2012 accident.
When findings are based on determinations regarding the credibility of witnesses, the manifest error-dearly wrong standard demands great deference to the trier of fact; for'only the fact finder can be aware of the variations in demeanor and tone of voice that bears so heavily on the listener’s understanding and belief in what is said. Rosell, supra. Our review of the evidence shows the trial court | ^carefully weighed Plaintiffs’ complete medical records, considered their preexisting injuries, and evaluated the credibility of witness testimony in arriving at its determination of damages. The record supports the trial *1032 court’s award of damages to Plaintiffs. As this Court finds no manifest error in that decision, we now consider Plaintiffs’ claims that their damages awards were abusively low.

B. Plaintiffs’ Contest to the Amount of Damages Awarded

Our Louisiana jurisprudence is well-settled that the trier-of-fact (here, the trial judge) is given great discretion in its assessment of quantum, both general and special damages. Guillory v. Lee, 2009-0075, p. 14 (La. 6/26/09), 16 So.3d 1104, 1116.[8] When the trier of fact awards general damages and the plaintiff alleges those damages are inadequate, the “abuse of discretion” standard applies. The “abuse of discretion standard” is both hard to articulate and necessarily “non-specific.” Cone v. National Emergency Services, Inc., 1999-0934 (La. 10/29/99), 747 So.2d 1085, 1089 (citing Youn v. Maritime Overseas Corp, 623 So.2d 1257 (La. 1993)). In reviewing a general damages award, an appellate court’s initial inquiry is whether the particular effects of the particular injuries on the particular plaintiff are such that there has been an abuse of the “much discretion” vested in the trier of fact. Youn, 623 So.2d at 1260. The rationale behind the application of the “much discretion” standard in review of general damage awards is that “awards of general damages, at least as to the amount awarded for injuries proved to have been caused by the tort, cannot be calculated with mathematical certainty.” Guillory v. Insurance Co. of North America, 1996-1084 (La. 4/8/97), 692 So.2d 1029, 1036 (Lemmon, J., concurring) (citing Viator v. Gilbert, 253 La. 81, 216 So.2d 821 (1968)). As such, general dam ages awards are necessarily reviewed under the “much discretion” standard articulated in La. C.C. art. 1999. Id.[9]
Because reasonable persons frequently disagree about the measure of general damages, such an award may be disturbed on appeal only when “the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances ...” Youn, 623 So.2d at 1261. Each case is different; the particular effects of the particular injury on the particular plaintiff must be considered. Id. Consideration of prior awards to determine whether a judgment is abusively low or excessively high is only appropriate after the appellate court has determined that an abuse of discretion has occurred. Cone, 1999-0934 at p. 8, 747 So.2d at 1089.
In contrast, special damages are those which have a “ready market value,” such that the amount of damages theoretically may be determined with relative certainty, including medical expenses and lost wages. Guillory, 2009-0075 at p. 16 So.3d at 1117. In determining whether to set aside a special damages award, an appellate court must engage in a two-step process: in reviewing the entirety of the record, the appellate court (1) must find no reasonable factual basis for the trial court’s conclusions and (2) the findings must be clearly wrong. Id., 2009-0075 at p. 16, 16 So.3d at 1118.

Mr. Urquhart’s General Damages Award

The Urquharts do not contend that the trial court abused its vast discre *1033 tion in relating only 80% of Mr. Urquhart’s injuries to the accident; rather, they contend hsthe trial court abused its discretion in the amount of damages awarded. Plaintiffs argue the general damages award of $30,000 to Mr. Urquhart was abusively low. In support, they emphasize that plaintiffs with injuries and treatment periods similar to Mr. Urquhart’s have been awarded $3,500.00 to $4,000.00 per month. As such, they seek to increase their general damages award from $30,000.00 to $66,000.00.
As previously discussed, the appellate standard of review in determining whether a general damages award is adequate is not based on the damages awarded to similarly injured plaintiffs, but rather whether the trial court abused its discretion in the damages awarded to the particular plaintiff based on the peculiar facts of the case. Youn, supra. Here, the record shows the trial court carefully considered Mr. Urquhart’s complete medical history and the testimony of his sons. The trial court weighed the credibility of the witnesses and found that Mr. Urquhart, although disabled before the May 2012 accident, sustained an aggravation to his preexisting condition. The record simply does not support the Urquharts’ claim that the general damages award to Mr. Urquhart was below that for which a reasonable fact finder could assess. As such, we find the general damages award to Mr. Urquhart was not abusively low so as to amount to an abuse of the trial court’s discretion.

Mr. Nye’s Damages Award

Mr. Nye argues the trial court erred in its general damages award of $100,000.00, which included $60,000.00 for non-RSD damages and $40,000.00 in RSD damages. He claims the trial court should have awarded him $2.5 million dollars, an amount which encompasses $750,000.00 for his multi-level back surgery; $750,000.00 for cervical disc herniation with recommended future anterior cervical fusion surgery; and $1,000,000.00 for his RSD diagnosis. Mr. hr,Nye also alleges the trial court erred in its special damages award of $211,798.60 for future special medical damages [10] and in failing to award damages for lost wages and loss of earning capacity. Mr. Nye asserts he should have been awarded $841,728.00 in past and future loss wages; $1,816,113.00 in future medical expenses; and $62,500.00 for the costs of a future anterior cervical fusion.
With reference to his general damages claim, Mr. Nye suggests the award of $100,000.00 was abusively low in part because it did not include an amount for his cervical disc herniation diagnosis and accompanying claim for a future anterior cervical fusion. We shall first address that claim before we consider whether the overall general damages award was inadequate.
Mr. Nye contends the record is “uneon-troverted” that Dr. Vogel, Mr. Roberts and Dr. Thompson concluded his cervical disc injury would require surgery and was related to the May 2012 collision. The record, however, does not support his contention that there was “uncontroverted” cervical surgery recommendation. Dr. Vogel testified that Mr. Nye’s MRI of the cervical spine “simply revealed small bulges at C4-5, 5-6, and 6-7.” He further testified that the issue of an anterior cervical fusion was still “pending” and surgery depended on whether or not Mr. Nye’s pain became “intractable.” Mr. Roberts, who admittedly is not a physician, testified an anterior cervical fusion “potentially” could be required. Moreover, there was not a definitive cervical surgery recommendation in Dr. Thompson’s medical records. Rather, the records showed Dr. Thompson recom *1034 mended palliative care, which consisted of radio frequency ablations, epidural steroid injections, and a spinal stimulator for Mr. Nye’s pain complaints.
117Mr. Nye testified he did have some symptoms with his neck and shoulders after the May 2012 accident; but, it was “nothing like [his] back and leg.” Mr. Nye never testified that he intended to undergo neck surgery after the May 2012 accident. However, Mr. Nye did testify he was willing to receive the palliative care as recommended by Dr. Vogel and Dr. Thompson for his pain, which he described as intractable before the May 2012 accident. Furthermore, Defendants’ physician, Dr. Thomas, controverted Mr. Nye’s claim of. any new injuries.
The record shows the trial court divided Mr. Nye’s general damages into-non-RSD and RSD damages. Whether the non-RSD damages award included an amount for Mr. Nye’s bulging cervical disc is unclear. Because no special damages were awarded for a cervical fusion, we can surmise that the trial court did not award general damages for the procedure. Generally, when a judgment is silent as to a claim or demand before- the court, the relief is deemed to have been rejected or denied. M.J. Farms, Ltd. v. Exxon Mobil Corp., 2007-2371, p. 12 (La. 7/1/08), 998 So.2d 16, 26.
The testimony revealed Mr, Nye had multiple accidents before the May 2012 accident, for which he was prescribed medication for his shoulder and back. He, on. multiple occasions with different doctors, failed -to relay an accurate history regarding his prior accidents, injuries, and medical treatment. Based on these factors alone, the trial court could have reasonably rejected Mr. Nye’s claim that he sustained neck injuries as a result of the present accident. Even assuming his cervical injury was not rejected by the trial court, Mr. Nye failed to introduce evidence that an anterior cervical fusion was more probably than not either required or recommended as a result of the May 2012 accident, See Frost, 2013-0375 at pp. 7-8, 140 So.3d at 64. The trial court made a reasonable evaluation of credibility which this Court declines to disturb upon review. See Rosell, supra.
Mr. Nye next contends that the remaining general damages award was inadequate, notwithstanding the exclusion of any award associated with his alleged cervical disc complaints. Mr. Nye argues an award of $100,000.00 is abusively low inasmuch as his medical providers related his multi-level back surgery and his RSD diagnosis to the accident. We disagree.
The trial court found Defendants liable for 100% of Mr. Nye’s RSD damages and only 50% of Mr. Nye’s non-RSD pain complaints. The trial court considered that Mr. Nye was already disabled; he reported the same intensity of pain complaints immediately before the May 2012 accident; and he received the same level of pain and anxiety medications before the accident as he did after the accident. These findings support the trial court’s attributing only a portion of his injuries to the accident, and limiting Mr. Nye’s “pain and suffering” general damages award to $120,000.00, re-' duced to $60,000,00 for his non-RSD related injuries and $40,000.00 for his RSD-related injuries to the accident, for a total combined general damages award of $100,000.00. Based upon the evidence, we eannot say that the trial court was unreasonable in its assessment of general damages or abused its discretion in its general damages award.
Similarly, we find no abuse of the trial court’s discretion in its special damages awards. As to Mr. Nye’s lost wage claims, the trial court found that he was disabled and unlikely to return to work at the time of the accident. While Mr.-Nye *1035 argues the accident thwarted his intent to return work and denied him income as a personal trainer, the record supports the trial court’s finding. In particular, Mr. Nye was on disability benefits and had previously been found unable to work. 1 ¶ flMoreover, Mr. Nye failed to submit any documentation of income earned as a personal trainer and never submitted any application to return to work. Consequently, the trial court was not clearly wrong in disallowing Mr. Nye’s loss wage claims.
Mr. Nye also argues he should havé received 100% of future medical expenses' because they relate to treatment for his RSD and costs for his anterior cervical fusion, all of which allegedly results exclusively from the May 2012 accident. Mr. Nye did not prove he would require a future anterior cervical fusion; we thus find the trial court did not err in failing to award $62,500.00 for the cost of the surgery.
The trial court determined Mr. Nye’s future medical award based on testimony from Dr. Vogel that future treatment would be palliative and designed to control his pain complaints. The medical records from Dr. Thompson also recommended a non-surgical course of treatment to deal with Mr. Nye’s pain complaints, which he described as “all over his body.” Based on this palliative course of treatment, the trial court awarded Mr. Nye future medical expenses of $310,939.20 for medication; $34,428.00 in pain management expenses; $72,480.00 for pain counseling; and $5,750.00 for a spinal stimulator, for a total of $423,497.20. These sums covered Mr. Nye’s 30.2 years life expectancy. The trial court then reduced the award by 50% to $211,798.60, based on its findings that the accident was only partially responsible for Mr. Nye’s pain complaints. Contrary to Mr. Nye’s assertions, the medical evidence did not show that his future medical treatment was only to deal with pain complaints that resulted exclusively from RSD. Thus, we conclude the record supports the trial court special damage awards.
12oUpon review, the trial court did not abuse its discretion in its award of general damages or special damages to Mr, Nye. Therefore, we likewise find this assignment of error unpersuasive.
CONCLUSION
Based on the foregoing, the judgment of the trial court is affirmed.
AFFIRMED
LOBRANO, J., CONCURS IN THE RESULT.

. The lawsuits filed by Mr. Nye and Mr. Urquhart against the defendants, respectively, were consolidated. Mr. Urquhart also filed suit against Mr. Nye; however, that lawsuit was settled before trial.

. Mr. Urquhart died on February 23, 2014, prior to the trial date. These documents were introduced in lieu of live testimony..

. Mr. Urquhart’s death certificate, which was admitted into evidence, lists his cause of death as cardio respiratory arrest, secondary to congestive heart failure-cardiac pacemaker-ascites.

. Dr. Kenneth Vogel, Mr. Nye’s neurosurgeon, described RSD as a neurological disorder where the normal sensation attached to the sympathetic nervous system becomes painful and results in possible discoloration, swelling, and edema.

. Palliative care includes a treatment plan to offer quality comfort to patients dealing with symptoms associated with a chronic illness. See palliativedoctors.org.

. Dr. Thompson’s'medical reports were introduced into evidence in lieu of his live testimony.

, This Court dismissed the consolidated appeals without prejudice because the initial judgment lacked the necessary decretal language. See Urquhart v. Spencer, 2015-1354 (La. App. 4 Cir. 12/1/16), 204 So.3d 1074. Upon remand, the trial court issued an amended final judgment from which both parties now appeal.

. See also La. C.C. art. 2324.1, which provides ''[i]n the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury.”

. La. C.C. art. 1999 provides "[wjhen damages are insusceptible of precise measurement, much discretion shall be left to the court for the reasonable assessment of these damages.”

. The parties stipulated to past medical damages of $167,563.85.